P. B. DeWEES and H. F. Wilcox, Jr., Individuals d/b/a DeWees-Wilcox & Company, Plaintiffs in Error,

v.

Edward CEDARBAUM and Mary Cedarbaum, Defendants in Error.

No. 39300.

Supreme Court of Oklahoma.

March 5, 1963.

As Amended on Denial of Rehearing May 13, 1963.

832

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for plaintiffs in error.

Milton W. Hardy, Margaret Lamm, Tulsa, for defendants in error.

JACKSON, Justice.

In this case we are asked to re-examine appellate procedure as set forth in 12 O.S. 1961 §§ 972 and 962(a), and to overrule prior decisions of this court.

In the trial court the plaintiffs, Edward and Mary Cedarbaum recovered a judgment against defendants, DeWees and Wilcox, doing business as DeWees-Wilcox & Company, and on May 5, 1960, defendants' motion for new trial was overruled.

Thereafter on July 29, 1960, the case-made was settled and signed by the trial court. The petition in error, with case-made attached, was filed in this court on August 22, 1960. Thus it will be seen that the appeal was filed in this court three months and seventeen days after the motion for new trial was overruled and twenty-four days after the case-made was settled and signed by the trial judge. Since the trial court had not granted any extensions of time to appeal it is apparent that the appeal was filed too late under both the "three months" and "twenty day" limitation periods imposed by 12 O.S.1961 § 972, unless those periods of time to appeal may be extended retroactively. We have never heretofore so held:

On the same day that the appeal was filed in this court (August 22, 1960), the defendants (appellants) filed a motion to withdraw the case-made for amending, correcting and completion. This application was granted and thereafter the defendants caused a proceeding to be conducted in the trial court under the provisions of 12 O.S. 1961 § 962, for the purpose of extending retroactively the "three months" and "twenty day" limitation periods for filing the appeal in this court.

At the hearing it was established that the law firm's attorney who had been handling the appeal for the defendants (appellants) had been ill, and other members of the firm had assisted in causing the case-made to be settled and signed on July 29, 1960. On July 30, 1960, the case-made was handed to the firm's attorney who had been handling the appellate proceedings with instructions that it was ready for filing in this court. It is the illness of this attorney, continuing after the case-made had been settled and signed, which is said to be responsible for the failure to file the appeal in this court on or before August 5, 1960. After hearing the matter the trial court concluded that it was divested of jurisdiction to extend the periods of time to appeal since the appeal had already been lodged in this court.

Thereafter on September 19 and 21, 1960, the defendants (appellants) filed an application and supplemental application (to which was attached the trial court proceedings) in this court for an extension of time under 12 O.S.1961 § 963, within which to perfect their appeal. This section of the statutes authorizes this court to extend the time for

making and serving case-made and for appealing where the trial court improperly refuses to do so under the provisions of 12 O.S.1961 § 962. The application was presented to this court and on October 25, 1960, an order was authorized and entered extending the appeal time to November 5, 1960.

Plaintiffs (appellees) have maintained throughout these proceedings, and still maintain that the appeal was not filed within the statutory time and that this court does not have jurisdiction to review the case on appeal. We must therefore re-examine our proceedings to determine our jurisdiction to entertain the appeal. Jones v. Norris, 185 Okl. 125, 90 P.2d 403; Biser v. Biser, 176 Okl. 210, 55 P.2d 446; Keenan v. Chastain, 64 Okl. 16, 164 P. 1145; Auto Convoy Company v. Smith, Okl., 351 P.2d 1053.

We will first consider whether the statutory limitation of three months for appeals may be extended *retroactively* after the expiration of three months from the order overruling motion for new trial.

In 1955 the Legislature amended 12 O.S. 1961 §§ 972 and 962, so that in pertinent part these two sections now provide as hereinafter shown.

"§ 972. Time for proceedings to reverse, vacate or modify judgments or orders.—All proceedings by case made for reversing, vacating or modifying judgments or final orders shall be commenced within twenty (20) days from the date the case made is settled; provided, however, that such proceedings must be commenced within three (3) months from the rendition of the judgment or final order complained of, provided, however, *the trial court may in its discretion extend the period of time not to exceed six (6) months from the date of judgment.* * * *" (Emphasis supplied)

The emphasized language from Sec. 972 authorizes an extension of the three months limitation period but does not purport to say whether this extension of time beyond three months may be retroactive; and it establishes no procedure for such an extension.

However, Sec. 962(a) does establish a procedure for retroactive orders and specifically provides that such orders may be made after the expiration of the time fixed in a previous order, or allowed by statute. This power to extend time retroactively is not limited to making and serving of case-made but includes the power to extend the three months appeal time retroactively under the procedure established. As supporting this conclusion we quote Section 962(a) and emphasize those words which, when read in sequence without reference to the other portions, demonstrates the correctness of this conclusion:

"§ 962. Extending time to make or serve case.—(a) *The court* in which any case has been tried and finally determined, *may*, from time to time *make orders extending the time for* the making and serving of a case, or *the filing of the proceedings in error*, for good cause shown, but not beyond the period in which the proceedings in error may be filed in the appellate court; and in the exercise of judicial discretion *the said court* or judge, upon notice to the adverse party, and after hearing, *may make such orders after the expiration of the time fixed in the previous order,* · *or time allowed by statute*, but this section shall in no manner be construed as affecting the statutes fixing the limit of time within which an appeal or proceeding in error may be begun in the appellate court. * * *" (Emphasis supplied) ·

Upon reconsideration of the emphasized portions of the two sections of the statutes we are convinced that the trial court may extend retroactively the three months appeal time allowed by Sec. 972, supra. This conclusion is in accord with decisions of the Oklahoma Court of Criminal Appeals. Talliaferro v. State, 20 Okl. Cr. 57, 200 P. 1068; Smith v. State, 41

Okl.Cr. 436, 274 P. 38; Harless v. State Okl.Cr., 307 P.2d 878. To so hold, however, would be contrary to that part of our opinion in Adams v. Hobbs (1950), 204 Okl. 85, 226 P.2d 913, wherein we held:

"* * * where no order is made by the trial court within three months from the rendition of the judgment or final order complained of, extending the time within which to file an appeal in this court, such judgment becomes final, and the trial court is thereafter without jurisdiction to extend the time within which to file such appeal."

From what we have concluded we must, and do, overrule Adams v. Hobbs and all other expressions of similar import in subsequent cases, but only in so far as they hold that the judgment appealed from becomes final after the expiration of three months without a prior order of extension of time to appeal.

We must now determine whether the trial court may extend the twenty day appeal time after settlement of case made either prospectively or retroactively. We have stated broadly in many cases that the twenty day limitation period may not be extended. Most of those expressions were made in cases where the six-months appeal time had expired or in cases where no application for extension was made during the six months period. Because of the fact that the application for extension in the instant case was made within the six months period and because of the dissents in Mitchell v. Great Western Oil and Gas Co., Okl., 347 P.2d 1039; Wanner v. Wanner, Okl., 350 P.2d 241; and Auto Convoy Co. v. Smith, Okl., 351 P.2d 1053, and the able briefs presented in this case, we have concluded that we must re-examine the statutes dealing with this question.

As applied to appeals by case made 12 O.S.1961 § 972 provides that the appellate proceedings "shall be commenced within twenty (20) days from the date the case made is settled. The section also provides that such proceedings must be commenced within three months from the final order

but authorizes the trial court to extend the period not to exceed six months. Thus Sec. 972 provides three limitation periods; 20 days, 3 months, and 6 months. The three months period is flexible and extendable. The 20 day and six month periods are not made flexible by the provisions of Sec. 972. If we read Sec. 972 without reference to 12 O.S.1961 § 962 we have two (plural) inflexible and unbreakable limitation periods: 20 days and 6 months.

12 O.S.1961 § 962, was amended on the same day as Sec. 972, supra, and must be given the same dignity and respect as Sec. 972, and must be construed if possible to give effect to both. For convenience we have divided Sec. 962(a) into three subdivisions, have emphasized portions thereof for special consideration, and quote it in part as follows:

(1) "The court * * * may * * * make orders extending the *time* for * * * the filing of the proceedings in error, for good cause shown, but not beyond the *period* in which the proceedings in error may be filed in the appellate court;

(2) and in the exercise of judicial discretion the said court * * *, upon notice to the adverse party, and after hearing, may make such orders after the expiration of the *time* * * * allowed by statute,

(3) but this section (Sec. 962) shall in no manner be construed as affecting the statutes fixing the *limit of time* within which an appeal or proceeding in error may be begun in the appellate court."

We have heretofore noticed that Sec. 972 provides for *two* (plural) limitation periods and that the twenty day period is a limitation within a six months period. However, in Sec. 962 the Legislature refers to only *one* (singular) limitation period (not plural), and uses the following expressions: "orders extending the *time*", "after the expiration of *time* * * * allowed by statute", and "statutes fixing the *limit of time*". Thus it would seem that the

Legislature intended to give the trial court under Sec. 962, and this court under Sec. 963, the power to extend the period of time for filing proceedings in error by case made but not beyond the statutory limit of time of six months. If the twenty day period is not extendable then subdivision No. 3, supra, must be reconstructed to add the letter "s" to word "limit", so that it would provide as follows:

"but this section shall in no manner be construed as affecting the statutes fixing the limits of time within which an appeal or proceeding in error may be begun in the appellate court."

■ Although we have concluded that the twenty-day period may be enlarged "prospectively", the extension thereof cannot be made except for good cause shown and only after the case-made has been settled. This is because the point of time at which the twenty-day period begins to run remains uncertain until the case-made has been settled, and the trial court would be dealing with nothing but pure speculation if he were called upon to determine the necessity for such extension in advance of the period at which the twenty-day limit commences to run. We further conclude that "in the exercise of judicial discretion" and *upon notice to the adverse party and hearing*, as provided in 12 O.S. 1961 § 962, the twenty-day period may also be extended retroactively "for good cause shown". However, both the prospective and retroactive extensions of the twenty-day limit must be made within the six months period from the date of the final order or judgment from which the appeal is taken. 12 O.S.1961 § 972. From what we have now concluded it follows that we must, and do, overrule all former expressions and any decisions of this court in conflict with the views herein expressed.

■ Plaintiffs also contend that no motion for new trial was ever filed by defendants herein in that their suit was leveled at the defendants, DeWees and Wilcox, as individuals; whereas the motion for new trial was filed by DeWees and Wil-

cox, as partners. In our examination of plaintiffs' pleadings we find that defendants have been variously referred to as individuals and also as "P. B. DeWees and H. F. Wilcox, Jr., co-partners doing business as DeWees-Wilcox · & Company." In announcing its judgment from the bench the court rendered judgment without objection against "P. B. DeWees and H. F. Wilcox, Jr., doing business as DeWees-Wilcox & Company." In the Journal Entry of Judgment the defendants are variously referred to as P. B. DeWees and H. F. Wilcox, Jr., and as DeWees and Wilcox & Co., a co-partnership composed of P. B. DeWees and H. F. Wilcox. It does not appear that these discrepancies were ever called to the attention of the court at any time. It does appear that DeWees and Wilcox were operating as a partnership in transacting business with the plaintiffs. In view of the foregoing we find no merit in plaintiffs' contention.

Coming now to the merits of the case the record shows that plaintiffs were the owners of a night club in Tulsa County, Oklahoma, known as the Orchid Club. For some years their insurance had been written by the Welch Insurance Agency of Tulsa. During that period plaintiffs and the Welch Agency were having difficulty in obtaining insurance coverage and were assisted by a representative of Insurance Facilities of Kansas City. When defendants took over the Welch Agency in 1955 they became the insurance agents of the plaintiffs and wrote insurance coverage on plaintiffs' night club and the contents thereof, and on plaintiffs' home and automobiles and other fire and casualty insurance.

Prior to the time the defendants took over the Welch Agency Lloyds of London had issued two certificates in the total sum of $27,500. These certificates contained warranty clauses requiring warranty coverage in domestic companies in the amount of twenty-five percent before the Lloyds certificates would be effective. The Lloyds certificates were continued in

effect by defendants but it became increasingly difficult to obtain warranty insurance from domestic companies in the amount required. At the time of the fire which occurred on March 3, 1957, there was ample coverage on the contents of the building but only $1,000 of warranty coverage on the building. Under these circumstances Lloyds disclaimed any liability on their certificates and offered to return the premiums. Plaintiffs collected $1,000 from National Surety Insurance Company and brought this action against the defendants to recover the balance of their fire loss on the building in the sum of $9,311.14.

The theory of plaintiffs' action is that an insurance agent or broker is liable if he neglects to renew a policy, or policies, which have expired and that under the evidence presented the defendants were under an obligation to keep the premises insured. It is their further contention that the defendants failed to notify the plaintiffs that the National Surety coverage had been reduced to $1,000 and that other policies had been cancelled.

■ Since this is an action in legal cognizance, tried without a jury, it is our duty to determine whether there is any evidence to support the judgment of the trial court in favor of plaintiffs.

The evidence shows that plaintiffs were familiar with the warranty clauses in Lloyds certificates, and that they were told of the difficulties that defendants were having in keeping warranty coverage insurance in effect. While it does not appear that defendants ever notified plaintiffs orally that their warranty coverage had been reduced or cancelled it does appear from the evidence that as defendants' insurance companies would cancel or reduce the amount of their warranty policies that the defendants would immediately send plaintiffs "credit memorandums" showing cancellation or reduction of the amount of coverage and giving credit rebates on the premium charges. However, plaintiff, Cedarbaum, testified that he had not read these although he was reasonably sure that he had received them.

It seems clear from the whole record that plaintiffs were not actually aware of the fact that they were without warranty coverage at the time of the fire.

The defendants introduced undisputed testimony that they had used every effort to keep the warranty coverage in full force and effect; that on occasions policies written by defendants would be immediately canceled by the insurance company, and on other occasions within two weeks after the effective date of the policy. That because of these immediate and numerous cancellations defendants had run out of companies. In connection with this line of testimony plaintiff, Cedarbaum, testified that he was relying wholly upon the defendants to keep the property adequately covered and further testified in substance that the defendant, DeWees, told him that he could always keep the property insured for thirty day periods. This, it was said, was because of the fact that it would take thirty days for the insurance company to effectively cancel out the policy.

■■ From the facts in this case it is apparent that the defendants were not negligent in failing to provide insurance coverage at the time of the fire. It may be that they were negligent in not "orally" notifying plaintiffs of the exact status of these policies at all times. However, if this be conceded it still does not appear that any other insurance company would have carried this risk. It had been offered to other agents by defendants but had not been accepted. It cannot be said that the defendants were under a duty to continue to write policies contrary to the wishes and instructions of their companies. In connection with our discussion see Annotation in 29 A.L.R.2d, page 171, "Duty and liability of insurance broker or agent to insured with respect to procurement, continuance, terms, and coverage of insurance policies."

In plaintiff's petition it was alleged that Lloyds of London was not authorized to do insurance business in Oklahoma, and that under the provisions of 36 O.S.1951 § 124, the defendants were personally liable

to the plaintiffs on Lloyds' Certificates or contracts of insurance.

■ If it can be said that plaintiffs proved that Lloyds were unauthorized to do business in Oklahoma we are of the view that recovery cannot be had upon that ground. The general rule seems to be, under statutes similar to ours, that the recovery, if any, is limited to the loss sustained which was covered by the unauthorized policy. See in this connection Winston-Norris Company v. King, 119 Okl. 109, 249 P. 319, and Annotation 131 A.L.R. page 1079, "Personal liability of agents or brokers in respect of policies of foreign insurance companies not authorized to do business in the state." Under the, evidence in this case, and under the record, Lloyds were not liable to plaintiffs under the terms of their Certificates and under the rule recovery could not be had against defendants under 36 O.S.1951 § 124, supra.

From the conclusions reached herein it follows that the judgment of the trial court must be, and accordingly is, reversed with directions to enter judgment for the defendants.

WELCH, DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.

BLACKBIRD, C. J., and HALLEY, V. C. J., dissent.

BLACKBIRD, Chief Justice (dissenting).

I cannot agree with the Majority opinion. I can find nothing that gives this court appellate jurisdiction of this case.

As I see it, the only way authority for our assuming jurisdiction of the case may be found is by reading it into Tit. 12 O.S. 1961 § 962.

In all previous cases in which we have considered whether an appeal may be lodged in this court later than the 20-day period immediately after settling of the case-made, prescribed by Tit. 12 O.S.1961 § 972, we have considered said 20-day provision as absolute, and have resisted all efforts to escape its effect. See Video Independent Theatres, Inc. v. Walker, Okl., 308 P.2d 958, followed in Jordan v. Snakard, Okl., 320 P.2d 396; Smith v. Independent School District Number Sixteen, Okl., 321 P.2d 430; Curry, Adm'r, v. Haynes, Okl., 326 P.2d 816; Missouri Pacific R. R. Co. v. Bumpers, Okl., 326 P.2d 1064; In re Stock District No. 2 of Adair County, Okl., 330 P.2d 597; City of Chandler v. Farley, Okl., 338 P.2d 885; Mitchell v. Great Western Oil and Gas Company, Okl., 347 P.2d 1039; Wanner v. Wanner, Okl., 350 P.2d 241; and Auto Convoy Co. v. Smith, Okl., 351 P.2d 1053.

By attempting to demonstrate that there are *three* "limits" of time contemplated in our statutes for the filing of an appeal, the Majority opinion reaches the conclusion that the proscription contained in sec. 962, supra, against said section's provisions for extensions of time, being construed as affecting the "limit" of time for such filing, could *not* include, or refer to the 20-day period. Always before, we have construed the law as contemplating *one* dead-line, or limit, viz., the end of 20 days after the case-made is settled, within the statutory three-month period (or any extension thereof up to six months) following " * * * rendition of the judgment or final order complained of * * *". (Sec. 972, supra). And we have consistently held that court orders extending the *three*-months, a litigant has the statutory *right* to use for compiling and completing a case-made and then filing it in this court, does not alter the statutory requirement. *that this last step must be taken within 20 days after settling of the case-made.* See cases, supra.

The Twenty-Second Legislature amended Tit. 12 O.S.1941 § 972, with its House Bill No. 161 (S.L.1949, p. 97) by reducing from six, to three, months the overall time lapse between the trial court's ruling, sought to be appealed, and the commencement of the appeal in this court. This law tempered

the effect of its reduction of time for the compiling of the case-made and the doing of all the necessary things leading up to its settlement, by authorizing the extension, or enlargement, of the new (reduced) three-month period to as much as the old six-month period, in the "discretion" of the court.

At that time and through 1954, there was no cause for the problem that has arisen in this case. Never before 1955 was there a law connecting the filing of an appeal in this court (by any prescribed statutory period) with the date, or event, of settling the case-made. Consequently, statutory provisions for extensions of time could apply to *nothing but* the three-month period for commencing appeals in this court (or an extension thereof), and the periods for making and serving case-mades. The pertinent part of sec. 972 (Tit. 12 O.S.1951) merely provided:

"All proceedings for reversing, vacating or modifying judgments, or final orders shall be commenced within three (3) months from the rendition of the judgment or final order complained of; provided, however, that the trial Court may in its discretion extend *period of time* not to exceed six (6) months. * * *"

Omitting some of its words not material here, sec. 962 (Tit. 12 O.S.1951) provided:

"The court in which any case has been tried and finally determined may, from time to time make orders extending the time *for the making and serving of a case,* or the *filing of the proceedings in error,* for good cause shown, but not beyond the period in which the proceedings in error may be filed in the appellate court; and in case of accident or misfortune * * *, the said court or judge, * * * may make such orders after the expiration of the time fixed in the previous order, or time allowed by statute, but this section shall in no manner be construed as affecting the statutes fixing the *limit of time* within which an appeal or proceeding in error may be begun in the appellate court." (Emphasis mine).

To what did the above-quoted words " * * limit of time within which an appeal or proceeding in error may be begun in the appellate court * * * " in sec. 962, supra, and the words " * * * extend period of time not to exceed six (6) months" in sec. 972, supra, refer? Obviously, the only period, to which the quoted wording in both statutes could have referred, was the period for beginning, commencing, or filing, an appeal in this court.

Any confusion in the interpretation of the present law had its origin in the 1955 Amendment, i. e., Senate Bill No. 44 of the Twenty-Fifth Legislature (S.L.1955, p. 140) which engrafted new wording (shown below, enclosed by parenthesis marks) into the first provision of the above quoted sec. 972, to make it read as follows:

"All proceedings *(by case made)* for reversing, vacating or modifying judgments or final orders shall be commenced within (twenty (20) days from the date the case made is settled; *provided, however, that such proceedings must be commenced within)* three (3) months from the rendition of the judgment * * * (etc.)." (Emphasis mine).

To me, it is clear that the Legislature, by leaving the rest of the wording of both sections 962 and 972 unchanged, and undisturbed, from what it had been previous to the passage of Senate Bill No. 44 in 1955, intended to make this new requirement, pertaining to settlement of the case-made, independent of and unaffected by, the provisions for time extensions that had never applied to anything except making or serving case-mades and the six or three month periods, the most of which latter periods had been most generally used, and frequently needed, in getting case-mades *ready for settlement.*

To me, the appending of this 20-day requirement to the first provision of section 972, supra, not only shows its draftsmen's

understanding of the process of preparing appeal records, but it also exhibits a deliberate effort on the part of the Legislature to prohibit the delay and procrastination, that had heretofore often occurred, in the filing of case-mades in this court, *after* they had been settled and should have been ready for filing, except for the routine matters of the execution of the trial judge's certificate to it, and its filing in the lower, or trial, court.

If section 972 or 962, supra, is to be changed, or amended, the task must await undertaking by the Law-Making Body. Such an operation cannot be lawfully accomplished by this Court, even though its members may feel that section 972's 1955 appendage works hardship, or injustice, under some circumstances.

I think the Legislature, and the public generally, were aware in 1955 (and perhaps for several years before) of the long period that had usually elapsed between the entry of trial court judgments in civil cases, and their appellate disposition; and believing in the maxim that "Justice delayed is (frequently) justice denied", perceived of one particular in which it could restrict, for the future, that part of the period which followed settling of the case-made.

I verily believe the majority opinion will relegate litigants, who have successfully prosecuted their cases in the trial courts, to the old uncertainty that existed previous to the 1955 amendment, supra, as to when they could expect appeals in their cases to be filed in this court, or could feel assured that they had been finally filed, and were ready for briefing or submission to this court. I do not think the Legislature was unwarranted in fixing a definite terminus for this, as, in my opinion, it did by inserting the 20-day provision in sec. 972, supra.

For the foregoing reasons, I respectfully dissent.

I am authorized to state that Vice Chief Justice HALLEY concurs in the views herein expressed.