Emilio Nunez, J.
Defendant Mayes, sued herein as president of the American Foreign Insurance Association, moves for dismissal of the complaint as to him as legally insufficient and for an order dropping him as a defendant, on the ground that he is not a necessary or proper party hereto. Plaintiffs sue herein to recover under an insurance policy issued by defendant St. Paul. Movant, an association of insurers, is joined as a defendant, upon the ground that it negotiates and effects the issuance of policies by its members and, by agreement among its members, negotiates and pays claims under these policies, including specifically, the policy sued upon herein and thus is or may be liable to plaintiffs herein.
The association, an unincorporated one, was formed many years ago and maintains an office in New York City for the development, conducting and management of the foreign insurance, surety and reinsurance business of its members — however it is not an insurer and does not conduct insurance business in its own name. The association’s constitution is, in substance, a reinsurance compact whereby each of the member companies agrees to, if necessary, insure each other against loss under policies issued. The Insurance Department of the State of New York, in an administrative interpretation of the association’s constitution, succinctly described its nature as ” in effect the representative for each of its member companies for the transaction of business in jurisdictions beyond the North American continent; * * * the operations of the Association are conducted in the names of the respective companies and treated in the same manner as quota share reinsurance to the extent of each company’s fixed participation.
“ The New York insurance department considers that the agreement, together with the Constitution and By-Laws, under which the members * * * operate, is a quota share reinsurance treaty.” If the association constituted no more than such a treaty, it is clear that an insured such as plaintiff would have no privity nor standing to sue the reinsurers (Pink v. American Sur. Co., 283 N. Y. 290; Sofia Bros. v. General Reinsurance Corp., 153 Misc. 6; People ex rel. Sea Ins. Co. v. *837 Graves, 274 N. Y. 312) even if the insured knew that the reinsurance compact existed (Greenman v. General Reinsurance Corp., 262 N. Y. 701, affg. 237 App. Div. 648). The cases cited by plaintiff on this point (Fischer v. Hope Mut. Life Ins. Co., 69 N. Y. 161; Glen v. Hope Mut. Life Ins. Co., 56 N. Y. 379) are inapposite for they concern not reinsurance in the customary sense but something more in the nature of an assumption of outstanding obligations under outstanding policies. (See Vance, Insurance, p. 1067.)
However more than the issuance of a policy and the existence of the reinsurance compact are herein concerned. The association, pursuant to its constitution, was founded for the purpose, among other things, ‘ ‘ to develop, conduct and manage the foreign insurance; surety and reinsurance business of its member companies ”. Among its powers, according to its constitution, are “a. to appoint agents and establish branch offices * * * to transact business within the purpose of the Association; b. to accept, underwrite, renew, cancel and terminate contracts of insurance, suretyship and reinsurance in the name or names of its member companies * * * within the purpose of the Association; c. to adjust, settle, submit to arbitration, compromise, prosecute or defend all claims, suits and proceedings at law, equity or admiralty or other judicial or extrajudicial proceedings arising out of transactions through the Association”. Further, defendant asserts, and it is not denied, that the policy sued upon was negotiated with and through the association and that at no time was it represented to plaintiff that the association was acting solely as an agent for St. Paul. Further, after the claimed loss, adjustment attempts and investigation were conducted through the association. Based upon these facts, plaintiffs assert that an issue exists with respect to the liability of the association. However, these additional activities on the association’s part, at most, amounted to actions by the association akin to that of a broker, and, of course, a broker is not liable as insurer once it has performed its services in delivering the policies and collecting and transmitting the premiums (Insurance Law, §§ 111, 119, 121, 125, 514; Clinchy v. Grandview Dairy, 283 N. Y. 39). Any implied understanding of the insured with respect to liability under the policy would, in the normal course, be merged into ■the formal insurance contract. That contract does not contain any indication of any liability on anyone’s part other than St. Paul. No allegation is made of any misrepresentation on this point. The provisions of the association’s constitution relative *838 to the imposition of liabilities upon the members in the event of the failure of a member, or for the protection of other members, are inapposite herein, for the conditions prerequisite to their becoming effective have not been met. As stated in section 207, page 1071, of Vance on Insurance, quoted by plaintiff: “ The contract of reinsurance may contain a provision whereby the reinsurer binds himself to pay to the policyholders any loss for which the insurer may become liable * * * the
reinsurer who has promised to pay the losses accruing under the original policies directly to the holders of such policies will be liable to a suit by the original insured under the contract of reinsurance ”. However .the instant reinsurance contract contains no such provision and, therefore, under the Graves case (supra) no cause lies against movant herein. Accordingly, the motion is granted.