**Michael CLOUD and Lucky Lady Club, Inc., Plaintiffs,**

v.

**ILLINOIS INSURANCE EXCHANGE, Defendant.**

**No. CIV-88-214-A.**

United States District Court, W.D. Oklahoma.

Dec. 2, 1988.

Chris Harper, Palmer, Wilson, Keirsey & Harper, Oklahoma City, Okl., for plaintiffs.

G. David Ross, Foliart, Huff, Ottaway & Caldwell, Oklahoma City, Okl., for defendant.

### ORDER

ALLEY, District Judge.

The defendant, Illinois Insurance Exchange (Exchange), moves the Court for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Exchange contends that it was wrongfully joined as a defendant in this action because it is not a party to a contract of insurance between the plaintiffs, Mike Cloud and Lucky Lady Club, Inc., and the Exchange's co-defendant, Britamco Underwriters, Inc. (Britamco).[1] Based on this insurance con-

---

1. Britamco is no longer an active party in this litigation. Britamco participated in arbitration

tract, the plaintiffs state two causes of action against the Exchange, one for breach of contract, and the other for breach of the duty of good faith and fair dealing. Both causes of action arise from the destruction of the insured property by fire on 23 October 1987, and the alleged failure of the Exchange to honor its contractual obligation to indemnify the plaintiffs for their loss.

For the reasons noted below, the Court grants the defendant's summary judgment motion in part and denies the motion in part, finding no genuine issue of material fact to sustain plaintiffs' cause of action for breach of the duty of good faith and fair dealing.

## I.

The facts presented to the Court upon a motion for summary judgment must be construed in a light most favorable to the nonmoving party. *Board of Education v. Pico*, 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. The Court is precluded from granting summary judgment where there is genuine dispute as to a fact which is material, that is, a fact which is relevant under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entitlement to judgment as a matter of law." *Id.* at 248, 106 S.Ct. at 2510. Moreover, entry of judgment is mandated against a party, after adequate time for discovery and upon motion, who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## II.

The Exchange contends that its status as a nonparty to the insurance contract covering the plaintiffs' property is the sole, undisputed material fact. In evaluating the Exchange's assertion, the Court must look to Oklahoma's law of contracts for guidance. *See Tipton v. Pike*, 550 F.Supp. 191, 194–95 (W.D.Okla.1982); Okla.Stat.Ann. tit. 15, § 162 (West 1976); *Restatement 2d* Conflict of Laws § 193 (1971). As in other jurisdictions, under Oklahoma law, the parties' intent is the central consideration in contract interpretation. *See* Okla.Stat. Ann. tit. 15, § 152. Section 152 provides that: "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Id.*

The language of the contract is, of course, the key indicator of the parties' intent. If ambiguous, language in insurance contracts is traditionally construed against the insurer. *See Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 913 (Okla. 1982); *Dayton Hudson Corp. v. American Mut. Lia. Ins.*, 621 P.2d 1155, 1157–58 (Okla.1980); 43 Am.Jur.2d *Insurance* § 283 (1982). However, courts "cannot change the terms of an unambiguous contract." *Traverse v. World Service Life Ins. Co.*, 436 F.Supp. 810, 811 (W.D.Okla. 1977). If explicit and unambiguous, contractual language must be given controlling effect, unless to do so would lead to absurd results. *See Torres v. Sentry Insurance*, 558 P.2d 400, 401 (Okla.1976) (quoting *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293 (Okla.1974)); Okla.Stat.Ann. tit. 15, § 154.

■ These general rules of construction also apply to insurers' contractual limitations on liability. Thus, within boundaries defined by public policy and statutes, insurers may limit their obligations and liabilities by contract, just like other commercial actors. *See Tipton*, 550 F.Supp. at 195; *Shultz v. Commercial Standard Ins. Co.*, 308 F.Supp. 202, 203–04 (W.D.Okla.1970);

---

proceedings as to its contractual liability and elected to accept an adverse arbitration award,

by failing to seek a trial de novo within the requisite twenty days. *See* Local Rule 43(*O*)(3).

accord *Creole Explorations, Inc. v. Underwriters At Lloyd's*, 245 La. 927, 161 So.2d 768, 775 (1964) (reversing trial court's decision to treat as a defendant a Lloyd's underwriter expressly excluded from liability by the contract).

■ As applied to the case at bar, these interpretive principles validate the Exchange's assertion of nonparty status. Each insurance policy processed by the Exchange has an attachment referred to as Schedule A, which names the Exchange and the underwriting syndicate and briefly describes their respective liability under the contract. Affidavit of Gary D. Hackley, at 2. As for the insurance contract at issue, Schedule A states that the Exchange is "not a party to this contract," and, further, notes that Britamco "accepts 100% of the liability under this contract." Hackley Affidavit, Exhibit A–3. The quoted language is unambiguous in its allocation of contractual liability to Britamco. Although found in an attached schedule, this language is a part of the contract, and, thus, the Court must give it effect. *See Timmons*, 653 P.2d at 913; 43 Am.Jur.2d *Insurance* § 295; *see also Barton v. American Family Mutual Ins. Co.*, 485 S.W.2d 628, 631 (Mo.Ct.App.1972) (applying the "well settled law in Missouri and elsewhere" on the effect of endorsements and riders). Moreover, the quoted language is sufficiently explicit to have put the plaintiffs on notice of a limitation on their rights of action under the contract. *Cf.* R. Keeton & A. Widiss, *Insurance Law* § 6.1(a), at 615 (1988) [hereinafter *Insurance Law*] (noting that courts may vary from the literal language of insurance contracts to protect the "reasonable expectations" of insureds).

Seeking to impose liability on the Exchange, the plaintiffs emphasize the salient role of the Exchange in major phases of the insurance contracting process. Indeed, it is undisputed that the contract at issue was dispensed through the Exchange. The Exchange regulates its member syndicates and assists them in finding entities in need of insurance. *See* Hackley Affidavit, at 1. If successful in finding interested purchas-

ers, the member syndicates forward underwriting slips to the Exchange where, in line with the instructions provided on the slips, the Exchange prepares policies for delivery to the member syndicates which, in turn, pass the policies on to the insureds. Deposition of Gary D. Hackley, at 8 (lines 10–14). Lastly, although the funds are apparently drawn from the syndicates' accounts, checks to pay insurance claims against the member syndicates bear the legend of the Exchange. *See* Deposition of Myron Adair Burdge, at 18 (lines 7–16); Ill.Rev.Stat. chap. 73, para. 719.27 (Hackley Affidavit, Exhibit A–1) (providing for syndicate accounts).

However, without more, the Exchange's involvement in the contracting process does not make it a "risk-bearing entity." Hackley Affidavit, at 2; *see Squibb–Mathieson Int'l Corp. v. St. Paul Mercury Ins. Co.*, 44 Misc.2d 835, 254 N.Y.S.2d 586, 587–88 (Sup.Ct.1964); *Creole Explorations Inc.*, 161 So.2d at 775; *cf. Insurance Law, supra*, 2.1(a), at 32–33 (noting that the Lloyd's insurance corporation of England does no underwriting, although engaged in extensive regulation of its underwriter syndicates). For example, in *Squibb–Mathieson*, it was undisputed that the plaintiff's insurance policy was issued through the defendant, an association of insurers. The plaintiff argued that the association's role in the insurance contracting process established its liability. Among other things, as described by the court, the association's activities were as follows: "it negotiates and effects the issuance of policies by its members and, by agreement among its members, negotiates and pays claims under these policies." 254 N.Y.S.2d at 587.

The *Squibb–Mathieson* court, however, did not find the association's conduct to be cogent proof of its contractual liability. Rather, the court found the association's activities to be "akin" to the activities of insurance brokers, who are not liable on the policies they negotiate after delivering them to the insureds and collecting the premiums. 254 N.Y.S.2d at 588. Also, the court noted that, although the association had never explicitly indicated to the plaintiff that it was functioning solely as an

agent for the named underwriter, St. Paul, the plaintiff's policy "d[id] not contain any indication of any liability on anyone's part other than St. Paul." *Id.* Thus, the court sustained the association's contention that it was not a proper party to the plaintiff's insurance contract action.

The Court finds the reasoning of the *Squibb–Mathieson* court persuasive as to the Exchange's contracting status. Like the association in *Squibb–Mathieson*, the Exchange's conduct in dispensing insurance policies and regulating its member syndicates resembles the conduct of actors in the insurance market—insurance brokers and Lloyd's associations, respectively—that are generally not liable on insurance contracts, at least when they are made between insureds and identified underwriters. *See Hall v. Farmers Ins. Exchange*, 713 P.2d 1027, 1031–32 (Okla.1985); *Insurance Law, supra*, §§ 2.1(a), 2.5(c); *accord American Mutual Services Corp. v. U.S. Liability Ins. Co.*, 293 F.Supp. 1082, 1084 (E.D.N.Y.1968). *See generally Lloyd's American Cousins*, 56 J.Am.Ins. 7, 8–9 (1979). Schedule A of the insurance contract at issue clearly identifies Britamco as the underwriter. Moreover, preferable to the situation in *Squibb–Mathieson*, the Court need not draw inferences from the silence of the contract in making its determination as to the Exchange's contracting status. Schedule A specifically states that: "The Exchange is not a party to this contract and has no liability hereunder." Hackley Affidavit, Exhibit A–3. Thus, the Court finds that the Exchange is not a party to the insurance contract between Britamco and the plaintiffs. This conclusion, however, does not end the analysis as to the Exchange's possible liability on the contract.

■ Assuming the Exchange's nonparty status, in the alternative, the plaintiffs argue that the Exchange is still liable on their policy because the Exchange assisted an unauthorized insurer, Britamco, to transact insurance in Oklahoma. Okla. Stat.Ann. tit. 36, § 1101. Section 1101 provides that companies giving such illegal assistance "shall be liable to the insured

for the performance of any contract between the insured and the [unauthorized] insurer." *Id.* § 1101(B); *see DeWees v. Cedarbaum*, 381 P.2d 830, 837 (Okla.1963); *Winston–Norris Co. v. King*, 119 Okl. 109, 249 P. 319, 320–21 (1926); *see also* Annotation, *Personal Liability of Agents or Brokers in Respect to Policies of Foreign Insurance Companies Not Authorized to Do Business in the State*, 131 A.L.R. 1079, 1088–89 (1941) (discussing the scope of statutory liability). Section 1101's proscription does not extend, however, to surplus line insurance "lawfully procured." Okla.Stat.Ann. tit. 36, § 1101(C).

The Court finds that the record does reveal a genuine issue as to the Exchange's liability on the contract under section 1101. First, the plaintiffs' submissions indicate that, at no time relevant here, was Britamco authorized to transact the business of insurance in Oklahoma. Deposition of Edward D. Dry, at 10 (lines 3–5); Burdge Deposition, at 10 (lines 13–15). This fact, of course, bears significantly on the liability issue because of the Exchange's broker-type activities noted above. Indeed, even without formally invoking section 1101, the Oklahoma Insurance Commissioner's office (Commission), has apparently adopted the view that the Exchange is ultimately responsible for deficiencies in the administration of policies issued under its governance. According to a Commission official, given a difficulty in policy administration, the Commission would look to the Exchange to "take care of the problem." Deposition of Edward D. Dry, at 13 (lines 19–25).

Second, although the Exchange's transactions have been in surplus line insurance, the requirements of the lawful-procurement exception, which would bar the application of section 1101 to the Exchange, may not be satisfied. Insureds may only solicit and purchase surplus line insurance through licensed surplus line brokers. Okla.Stat.Ann. tit. 36, §§ 1106(2), 1422(6) (West 1976 & Supp.1988). Surplus line brokers may only contract with certain "unauthorized insurers" to procure such insurance; specifically, those unauthorized insurers that the Commission has granted certificates of approval. *Id.* § 1106(1).

The Commission granted the Exchange such a certificate of approval on 14 July 1987, but the evidence indicates that the Commission has not approved Britamco as an unauthorized surplus-line insurer. *See* Plaintiffs' Exhibit 2; Dry Deposition, at 25 (lines 13–17).

Thus, the Exchange is free to contract with insureds through licensed surplus line brokers, but Britamco is not. Yet, as the defendant itself notes, Britamco is the underwriter of the insurance contract at issue, not the Exchange. To the extent, then, that the Exchange has assisted Britamco in securing its contract of insurance with the plaintiffs, the Exchange has illegally assisted an unapproved, unauthorized insurer. Therefore, the Court finds that a genuine issue exists as to the Exchange's liability on the contract at issue under section 1101.

### III.

By establishing section 1101 as the sole basis for the Exchange's potential liability on the contract, the Court renders untenable the plaintiffs' good-faith cause of action. Under Oklahoma law, a "stranger" to a contract of insurance can not be held liable for a breach of the duty of good faith and fair dealing. *Hall*, 713 P.2d at 1031–32; *see Timmons*, 653 P.2d at 912–13; *see also Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1225–27 (Okla.1988) (discussing the doctrinal basis of the duty of good faith and fair dealing). True, under section 1101, the Exchange may stand in the shoes of Britamco, the unauthorized insurer, as to liability on the contract. However, the Exchange's potential liability under section 1101 is limited to "the loss sustained which was covered by the unauthorized policy." *DeWees*, 381 P.2d 830; *see Winston–Norris*, 249 P. at 321. Citing the Exchange's "intentional and wrongful conduct" in their good-faith cause of action, the plaintiffs demand consequential and punitive damages. Amended Complaint ¶ XIV. Yet, under Oklahoma law, the Court can not sustain this demand. Accordingly, the Court grants the Exchange's motion for summary judgment on the plaintiffs' good-faith cause of action. There is no genuine dispute on the relevant material fact: the Exchange is not a party to the insurance contract between Britamco and the plaintiffs.

### IV.

In sum, the Court denies summary judgment in part and grants summary judgment in part, finding that: (1) the defendant Exchange is not a party to the insurance contract between Britamco and the plaintiffs but is, nevertheless, subject to liability on the contract under section 1101 of the Oklahoma Insurance Code; and (2) the defendant Exchange is immune from liability on the plaintiffs' cause of action for breach of the duty of good faith and fair dealing, as a nonparty to the insurance contract between Britamco and the plaintiffs.

IT IS SO ORDERED.