**KLOCKNER STADLER HURTER LTD., Plaintiff,**

v.

**The INSURANCE COMPANY OF The STATE OF PENNSYLVANIA, National Union Fire Insurance Company of Pittsburgh, and American International Underwriters Corporation, Defendants.**

**No. 89 Civ. 8063 (KC).**

United States District Court,
S.D. New York.

July 11, 1990.

See also 780 F.Supp. 148.

## MEMORANDUM AND ORDER

CONBOY, District Judge:

Currently pending before the Court are two motions by the defendants, the Insurance Company of the State of Pennsylvania ("ICSP"), National Union Fire Insurance Company of Pittsburgh ("NUFI"), and American International Underwriters Corporation ("AIU"). First, the defendants seek to dismiss pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure, for failure to join an indispensable party. Second, the defendants move to dismiss for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6). For the reasons set forth below, the motion pursuant to Rules 12(b)(7) and 19 is denied, and the motion pursuant to Rule 12(b)(6) is granted in part and denied in part.

## BACKGROUND

Plaintiff Klockner Stadler Hurter Ltd. ("KSH"), a Canadian corporation, was retained by Sabah Forest Industries Sdn. Bhd. ("SFI") and its consortium partners to act as general contractors for the construction and erection of the Sabah Pulp and Paper Project (the "Sabah Project") in Sipitang, Malaysia. In connection with the Sabah Project, Progressive Insurance Sdn. Bhd. ("Progressive"), a Malaysian insurance company, executed and delivered to KSH its policy of Contractor's All Risks/Erection All Risks Comprehensive General Liability Insurance (the "Contractor's All Risks Policy") for the period May 1, 1984 to November 1, 1987 inclusive. Defendant AIU, as foreign manager of defendant ICSP, executed a guarantee (the "Guarantee") whereby ICSP reinsured Progressive on the Contractor's All Risks Policy for 75% of the limits provided by that policy.

Also in connection with the Sabah Project, NUFI, through its Austrian branch office, caused to be executed and delivered to KSH its policy of Combined Contractor's All Risks/Erection All Risks Comprehensive General Liability Insurance and Difference in Conditions Policy (the "Difference in Conditions Policy"). The coverage provided by this policy is limited to the differ-

ences between the insurances, perils and other terms, conditions and definitions of that policy and those of the Contractor's All Risks Policy.

In August of 1985, an effluent treatment basin loss occurred at the Sabah Project. In January of 1987, a loss occurred in the high density concrete storage tanks at the Sabah Project. Within three months of each loss, KSH notified defendants of the loss. On February 13, 1989, defendant AIU, acting on behalf of defendants ICSP and NUFI, denied both claims. On June 14, 1989, NUFI, through its Austrian branch office, denied both claims, for the same reasons previously stated by AIU. KSH then brought this action in December of 1989.

## DISCUSSION

### I. *Rules 12(b)(7) and 19*

■ Defendants argue that because SFI and Progressive are not parties to this action, the action must be dismissed, pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure, for failure to join a necessary and indispensable party. Rule 19 provides for compulsory joinder of parties who are needed for just adjudication. Rule 19(a) sets forth the standards for determining when a party should be joined if feasible. Thus,

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Defendants argue that SFI and Progressive are parties who should be joined if feasible: first, because without them complete relief cannot be accorded among those already parties; second, because these parties have an interest which cannot be protected in their absence; and third, because defendants will be subject to multiple or inconsistent obligations if this action is disposed of without the missing parties.

As KSH points out, complete relief can be accorded among those already parties without joining SFI and Progressive. KSH seeks coverage for the two losses it suffered at the Sabah Project, and alleges that ICSP, as Progressive's reinsurer, is liable for up to 75% of those losses, or that NUFI is liable for them. The presence of neither Progressive nor SFI is necessary to determine whether or not ICSP and NUFI are liable to KSH.

We also do not believe that Progressive and SFI have interests in this action that cannot be protected in their absence. It appears from the reinsurance contract that Progressive has assigned to KSH "all rights of service and suit and all monies receivable from its reinsurers to the extent of their interest, wholly and absolutely." Contractor's All Risks Policy (attached as Exhibit A to Defendants' Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure ("Def. 12(b)(7) Mem.")) at ¶ 2.16(1). In addition, Progressive agreed "to follow and be bound by the settlements made by leading reinsurers." *Id.* at ¶ 2.16(2)(d). Thus, Progressive does not appear to have an interest in this action. Even if it did, ICSP could adequately protect those interests.

With respect to SFI, KSH asserts that "the evidence will show that it was merely KSH's client and that its inclusion as a named insured was in fulfillment of one of the terms of its construction contract with KSH and KSH's consortium partners." Memorandum of Klockner Stadler Hurter Ltd. in Opposition to Defendants' Motion to Dismiss Pursuant to Rules 12(b)(7) and 19 ("Pltf. 12(b)(7) Mem.") at 9. More importantly, KSH states that "the evidence will show that [now that] the construction contract has been completed, ... SFI has ac-

cepted the work, and it is only KSH and not SFI that is out of pocket as a result of defendants' actions." *Id.* at 9–10. Accordingly, it does not appear that SFI has an interest in the relief sought here.

Finally, defendants argue that they will be subject to multiple or inconsistent obligations if SFI and Progressive are not joined as parties. Defendants assert that

A determination in favor of these Defendants would not prevent the Plaintiff or SFI from instituting suit against Progressive in Malaysia. The entire matter would be relitigated. The ensuing duplicative litigation could lead to a finding that Progressive is liable. Progressive would then assert its contractual right to seek reinsurance benefits under the cover note from ICSP, and square one would be reached once again.

Def. 12(b)(7) Mem. at 6. As explained above, it does not appear that SFI has any interest in this or any action against the defendants. Although there is a possibility that KSH may sue Progressive in Malaysia, if KSH does not prevail here, leading to a risk of inconsistent obligations for the defendants, we do not believe that this risk is "substantial," as required by Rule 19. *See* Pltf. 12(b)(7) Mem. at 13 ("the possibility of other litigation concerning this transaction is either nonexistent or extremely remote").

Even if the risk of inconsistent obligations were substantial, making Progressive and SFI parties to be joined if feasible, they are not indispensable parties under Rule 19(b). It would not be feasible to join Progressive and SFI as parties, since as foreign corporations, they would destroy our diversity jurisdiction. Thus, we must consider whether, pursuant to Rule 19(b), "in equity and good conscience the action should proceed among the parties before" the court. The determination of whether an entity is an indispensable party depends on the facts and circumstances of each case. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968). The Supreme Court, in examining Rule 19(b), identified four " 'interests' that must be examined in each case to determine whether in equity and good conscience, the court should proceed." *Id.* at 109, 88 S.Ct. at 737.

"First, the plaintiff has an interest in having a forum," and thus the court must determine "whether a satisfactory alternative forum exists." *Id.* Defendants suggest that KSH should have brought suit in Malaysia. Def. 12(b)(7) Mem. at 18. Malaysia does not appear to be a satisfactory alternative, however, as it is not certain that defendants would be subject to personal jurisdiction in Malaysia. New York state courts would also not provide a satisfactory alternative, since SFI and Progressive may not be subject to suit in New York. Thus, this factor seems to weigh in KSH's favor.

"Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for liability he shares with another." *Id.* at 110, 88 S.Ct. at 738. As explained earlier, there appears to be a possibility of inconsistent obligations, although, as KSH argues, this possibility is remote. Pltf. 12(b)(7) Mem. at 13. Nevertheless, we will treat this interest as if it weighs in defendants' favor.

"Third, there is the interest of the outsider whom it would have been desirable to join." *Id.* As we have already found, SFI and Progressive do not have a significant interest in this litigation. Finally, "there remains the interest of the courts and the public in complete, consistent and efficient settlement of controversies." *Id.* at 111, 88 S.Ct. at 739. As we determined earlier, complete relief may be accorded among those already parties. Moreover, the possibility of further litigation is remote. Thus, we find that these interests also weigh in favor of KSH.

Our analysis of these four factors leads us to conclude that this action is not one which, "in equity and good conscience," must be dismissed in the absence of parties who should, but cannot, be joined. Accordingly, the motion to dismiss pursuant to Rules 19 and 12(b)(7) is denied.

II. *Rule 12(b)(6)*

Defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss each of the four counts of the complaint. We address each count in turn.

█ First, defendants argue that count one of the complaint, which alleges a breach of contract action against defendant ICSP, must be dismissed because KSH, as the insured, cannot sue ICSP, the reinsurer, directly. Under New York law, "[a]bsent provisions to the contrary, a reinsurer is under no contract obligation to the original insured and does not become liable to him." *Turner Construction Co. v. Seaboard Surety Co.*, 85 A.D.2d 325, 327, 447 N.Y.S.2d 930, 932 (1st Dep't 1982) (citations omitted). Thus, an insured ordinarily does not have a direct right of action against a reinsurer, since the reinsurance contract is only one of indemnity to the original insurer. *See Greenman v. General Reinsurance Corporation*, 237 A.D. 648, 262 N.Y.S. 569 (2d Dep't), *aff'd*, 262 N.Y. 701, 188 N.E. 128 (1933); *Insurance Co. of the State of Pennsylvania v. Park & Pollard Co.*, 190 A.D. 388, 180 N.Y.S. 143 (1st Dep't), *aff'd*, 229 N.Y. 631, 129 N.E. 936 (1920).

█ As KSH points out, however, the relationship among KSH, Progressive and ICSP does not appear to have been a typical insured/insurer/reinsurer relationship. Reinsurance is the "ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the ... ceding company, ... [which] retains all contact with the original insured, and handles all matters prior to and subsequent to loss." *Skandia America Reinsurance Corp. v. Schenck*, 441 F.Supp. 715, 724 (S.D.N.Y. 1977) (quoting 13A J. Appleman & J. Appleman, *Insurance Law & Practice* § 7681, ch. 278, at 480 (rev. ed. 1976)). In this case, however, KSH alleges that defendant AIU, on behalf of ICSP, directly handled all matters prior to and subsequent to loss, and dealt directly with KSH. Complaint ¶¶ 32, 36, 37, 38. Indeed, AIU's denial of coverage led to the filing of this lawsuit. Thus, it appears that KSH and AIU, on behalf of ICSP, had a direct relationship that bypassed Progressive, the insurer.

In addition, by agreeing to reinsure Progressive under the Contractor's All Risks Policy, which apparently assigns to KSH the right to sue reinsurers directly, *see supra* at 1132, ICSP seems to have consented to being sued by insureds. *See Squibb–Mathieson Int'l Corp. v. St. Paul Mercury Ins. Co.*, 44 Misc.2d 835, 254 N.Y.S.2d 586 (N.Y.Sup.Ct.1964) (contract of reinsurance may contain provision whereby reinsurer binds himself to pay to policyholders any loss for which insurer may become liable, and thus reinsurer may be liable to suit by original insured under contract of reinsurance). Under these circumstances, KSH may maintain a cause of action against ICSP.

Defendants further argue that, even if KSH may, pursuant to the insurance contract, maintain a cause of action against ICSP, it has not met the necessary prerequisite for doing so, namely "settlement of loss" with Progressive. In support of this argument, defendants point to the Contractor's All Risks Policy, which provides that "[t]he assignee [KSH] is at liberty to collect claims, after settlement of loss, directly from reinsurers to the proportion in which reinsurers are bound to settle loss, in the domicile of the reinsurers." Contractor's All Risks Policy at ¶ 2.16(3). It is not at all clear to us, however, that this language requires KSH to sue Progressive before suing ICSP. Indeed, such an interpretation seems unlikely in light of the prior practices between the parties, described above, and in light of Progressive's apparent assignment, in Paragraph 2.16(1) of the Contractor's All Risks Policy, *see supra* at 1132, to KSH of the right to sue Progressive's reinsurers, including ICSP. Thus, we find that, in count one of the complaint, KSH states a claim against defendant ICSP.[1]

---

**1.** Should it appear during discovery that KSH   does indeed have to "settle loss" with Progres-

Second, defendants argue that count two of the complaint, which alleges that NUFI is liable under the Difference in Conditions Policy for the effluent basin loss and the storage tank loss, is time-barred. In support of this argument, defendants, relying on a Quebec statutory condition assertedly incorporated into the Differences in Conditions Policy, argue that the policy requires an action to be brought within one year of the date of loss. Differences in Conditions Policy (attached as Exhibit C to Def. 12(b)(7) Mem.), Statutory Conditions, ¶ 14. Because KSH did not bring suit until December of 1989, over four years from the date of the effluent basin loss, and over two years from the date of the storage tank loss, defendants assert that KSH's action is not timely.

KSH responds that this statutory condition forms no part of the Difference in Conditions Policy delivered to KSH, and further that the provision cited by defendants has been revised. The currently applicable Canadian statute provides that "[a]n action arising from an insurance contract is prescribed by three years from the time the right of action arises." Quebec Civil Code, Article 2495.[2] Thus, KSH argues, since it brought this action within three years from the date NUFI denied coverage, the action is timely.

We cannot determine from the papers before us which statutory condition, if any, applies to the Differences in Conditions Policy. Even if the statutory condition cited by the defendants applies, a question of fact exists as to whether the defendants are estopped from asserting the statutory defense. According to the Complaint, KSH notified defendants of the effluent basin loss within one month of the date of the loss, "which was ... within the time specified in Paragraph 2.3 of the Difference in Conditions Policy." Complaint ¶ 26. In addition, KSH notified defendants of the storage tank loss within three months of the date of the loss, which was also within the time specified in the policy. Id. at ¶ 27. NUFI, through its Austrian Branch Office, did not deny the two claims until June 14, 1989, and KSH filed this action in December of 1989, well within a year from the date on which the claims were denied. Having not themselves disposed of the claims for a period well beyond the one-year limitation period they now seek to impose, defendants may be estopped from relying on the one-year limitation. See Buchanan v. New York City Health and Hospitals Corporation, 70 A.D.2d 923, 924–25, 417 N.Y.S.2d 758, 759–60 (2d Dep't 1979).[3] Because there are unresolved questions of fact relating to the applicable statute of limitations, defendants' motion to dismiss for failure to file a claim within one year of the date of loss is denied.

◼ Third, defendants argue that count three of the Complaint, which alleges that defendant AIU is directly liable, as the alter ego of ICSP and NUFI, for losses claimed to be covered under the Progressive and NUFI policies, should be dismissed because KSH has not alleged the requisite elements of an alter ego relationship between AIU and Progressive. We agree. Under New York law, two elements must be pleaded and proven to establish an alter ego theory:

> The parent must exercise complete domination "in respect to the transaction attacked" so that the subsidiary had "at the time" no separate will of its own, and such domination must have been used to

sive before suing ICSP, we will reconsider defendants' arguments in a motion for summary judgment.

**2.** Although defendants rely on the Quebec statutory condition in their moving papers, they inexplicably argue in their reply papers that they did not have proper notice of KSH's intention to rely on foreign law. Defendants' Reply Memorandum in Support of Their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Def. 12(b)(6) Reply Mem.") at 6.

**3.** We note, however, that a claim that the insurer should be estopped from asserting a limitations defense appears to be a difficult one for a plaintiff to establish. See, e.g., Galligan v. Royal Globe Ins. Co., 119 A.D.2d 987, 500 N.Y.S.2d 993 (4th Dep't 1986); Soltex Thread Co., Inc. v. Rueff Bros., Inc., 111 A.D.2d 84, 489 N.Y.S.2d 210 (1st Dep't 1985); Arkin–Medo Corp. v. St. Paul Fire and Marine Ins. Co., 585 F.Supp. 11, 12 (E.D.N.Y.1982), aff'd, 742 F.2d 1430 (2d Cir. 1983).

"commit fraud or wrong" against plaintiff, which proximately caused plaintiff's injury. *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.) (quoting *Lowendahl v. Baltimore & Ohio R.R.*, 247 A.D. 144, 157, 287 N.Y.S. 62, 76 (1st Dep't), *aff'd*, 272 N.Y. 360, 6 N.E.2d 56 (1936)), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). KSH has pleaded neither the requisite domination and control, nor the requisite fraud or illegality.

■ With respect to control, the Complaint alleges merely that AIU was in the business of "managing, among other insurance companies within the American International Group of Companies, defendants [ICSP] and [NUFI]." Complaint ¶¶ 5, 31. KSH also describes the relationship as an "operating arrangement." Complaint ¶ 32. These factual allegations fall far short of the domination required under New York law. KSH does not show "that [ICSP and NUFI were] controlled and dominated to such an extent that [they] had no existence of [their] own." *Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. 727, 733 (S.D.N.Y. 1986); *see also Coastal States Trading, Inc. v. Zenith Navigation S.A.*, 446 F.Supp. 330, 337 (S.D.N.Y.1977) ("'puppeteer' must so thoroughly interpose itself into the conduct of the controlled corporation that it can be said that the latter is merely a 'screen' for the activities of the former"). KSH also makes no reference to any of the

> factors that are appropriate for consideration in determining whether the corporate veil should be pierced, including: "(1) the absence of the formalities which are part and parcel of normal corporate existence, ... (2) inadequate capitalization, and (3) personal use of corporate funds."

*Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. at 733 (quoting *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir.1984)).

With respect to the second requisite element, that the control and domination must have been used to commit a fraud or legal wrong, the allegations in the Complaint are also inadequate. KSH asserts that the AIU's mere communication of the denial of KSH's claims satisfies the fraud or illegality requirement. Memorandum of Klockner Stadler Hurter Ltd. in Opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) ("Pltf. 12(b)(6) Mem.") at 9. This is not, however, the type of "wrong" required for the alter ego theory. Rather, "[t]here must be a showing that the dominated corporation was used to commit a fraud." *Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. at 735 (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 903 (2d Cir.1981); *Williams v. McAllister*, 534 F.2d 19, 21 (2d Cir.1976)). There is simply no indication that AIU dominated or controlled ICSP and NUFI to commit a fraud or legal wrong.[4] Because KSH has failed to plead the requisite elements of an alter ego theory, count three of the Complaint must be dismissed.

■ Finally, defendants argue that count four, which alleges that AIU must be estopped from denying liability to KSH pursuant to an alleged contract of insurance, must be dismissed for failure to plead certain contractual prerequisites, including the terms and conditions of the contract, the subject matter, identification of the risk insured, duration of risk, identity of parties to the contract, premium amount, and amount of insurance. While it is true that a plaintiff claiming the existence of an oral agreement of insurance must allege all of its essential terms, *Bulger v. Tri–Town Agency, Inc.*, 148 A.D.2d 44, 46, 543 N.Y.S.2d 217, 218 (3d Dep't 1989), *appeal dismissed*, 75 N.Y.2d 808, 552 N.Y.S.2d 110, 551 N.E.2d 603 (1990), count four essentially alleges that AIU acted as the insurer under the Contractor's All Risks Policy and the Differences in Conditions Policy.

---

**4.** In fact, KSH's alter ego theory appears to be an attempt to avoid the result in *Squibb–Mathieson Int'l Corp. v. St. Paul Mercury Ins. Co.*, 44 Misc.2d 835, 254 N.Y.S.2d 586 (N.Y.Sup.Ct. 1964), which held that an association of insurers, which, similar to AIU, conducted and managed the foreign insurance, surety and reinsurance business of its members, but was not itself an insurer and did not conduct insurance business, could not be sued by its members' insureds.

Thus, the essential terms of an oral contract of insurance between KSH and AIU would be the same as the terms of those two policies.

Defendants further argue that count four fails to allege an agreement or representation by AIU that it would be the insurer for the construction project or that it would pay any loss. Indeed, count four asserts that "[b]y virtue of the continuous course of dealing between KSH and AIU, a direct insurance relationship has arisen between these two entities." Complaint ¶ 38. According to KSH, this "course of dealing" included:

> (1) KSH submitted all claims (not just the claims at issue in this lawsuit) arising under the Contractor's All Risks Policy, the Guarantee and the Difference in Conditions Policy to AIU; (2) AIU consistently responded to these other claims and directly reimbursed KSH for them; and (3) AIU made the ultimate decisions taken with respect to all claims, including the claims at issue in this lawsuit (Complaint ¶¶ 36, 37, 38).

Pltf. 12(b)(6) Mem. at 10. Accepting KSH's version of the "course of dealing" between it and AIU as true, as we must on a motion to dismiss, we believe that count four adequately sets forth an estoppel claim. Accordingly, defendants' motion to dismiss count four is denied.[5]

## CONCLUSION

Defendants' motion to dismiss pursuant to Rules 12(b)(7) and 19 is denied. Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted as to count three, but it is otherwise denied. The parties are directed to appear before the Court for a status conference in Courtroom 2703 on Monday, July 30, 1990 at 11:20 a.m.

SO ORDERED.

---

5. We note, however, that in the Complaint KSH identifies AIU as manager of its member companies, including ICSP and NUFI. If it appears during discovery that AIU was simply acting as a manager or claims processing service for ICSP and NUFI, and not as an insurer or reinsurer, then we will consider dismissing count four on a motion for summary judgment. *See Squibb–Mathieson Int'l Corp. v. St. Paul Mercury Ins. Co.*, 44 Misc.2d 835, 254 N.Y.S.2d 586 (N.Y.Sup. Ct.1964).