**GENERAL REINSURANCE CORPORATION, Plaintiff,**

v.

**MISSOURI GENERAL INSURANCE CO.,** Henry W. Edmiston, Director, Div. of Insurance, and Receiver for Missouri General Ins. Co., James A. Polsinelli, Commissioner of Claims for Missouri General Insurance Company, Mississippi Insurance Company Assn., Wholesale Materials Co., Inc., Charles F. Jones and Hattie K. Keeton, Defendants.

No. 76 CV 4–W–1.

United States District Court, W. D. Missouri, W. D.

Dec. 15, 1977.

**2**

William H. Sanders, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for plaintiff.

John C. Craft and William C. Jolley, Jr., Kansas City, Mo., for Missouri Gen. Ins. Co. and Henry W. Edmiston.

James A. Polsinelli, Kansas City, Mo., for James A. Polsinelli.

Neal E. Millert, James, Odegard & Millert, Kansas City, Mo., for Mississippi Ins. Guaranty Assn.

Charles W. Havens, III, Washington, D.C., for amicus curiae.

1. The stipulation of uncontroverted facts includes the stipulations concerning the intervenor's claim against the fund. Upon the stipulation of the parties, the intervenor's complaint was dismissed on April 25, 1977.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, Chief Judge.

This is an interpleader action to determine who is entitled to the proceeds of an agreement of reinsurance between General Reinsurance Corporation [hereinafter General Reinsurance], and an insurance company which became insolvent during the litigation of insurance claims against it. Jurisdiction is based on 28 U.S.C. § 1335 (1970).

The case is before us for final judgment on stipulated facts. The stipulation of uncontroverted facts entered into by the parties and the exhibits filed therewith are attached hereto as Appendix A.[1]

A number of legal issues are raised in the briefs filed in this case by the Mississippi Insurance Guaranty Association [hereinafter the Association]; the receiver, (the Director of the Missouri Division of Insurance), and amicus curiae, the Reinsurance Association of America.[2]

The Association first argues that it is entitled to the proceeds of the reinsurance agreement because under Missouri law it is subrogated to the rights of a third-party beneficiary of the contract between General Reinsurance and the insolvent Missouri General Insurance Company [hereinafter Missouri General]. Secondly, it contends that under Mississippi law it is the "statutory successor" of the insolvent company. Finally, it submits that because it has paid the full claim, public policy "dictates" that it recover the proceeds. The receiver and amicus dispute those contentions, arguing that under the contract and Missouri law the reinsurance proceeds are assets of the insolvent corporation and are to be distributed generally among its creditors.

After careful review of the briefs and the cases and statutes cited by the parties, we find and conclude that the receiver of Missouri General is entitled to the interpleaded funds for reasons we shall state.

2. Leave to file an amicus brief was granted on July 28, 1977.

## I. Third-Party Beneficiary Claim

The Association first contends that under Missouri law it is subrogated to the claim of an alleged third-party beneficiary to the reinsurance agreement. The third-party beneficiary under this theory is Hattie Keeton; when the Association paid her claim, it argues that it became subrogated to whatever rights she would have had under the contract.

The terms of the reinsurance agreement between General Reinsurance and Missouri General clearly provides that reinsurance proceeds can be paid only to the reinsured company,[3] unless the reinsured company becomes insolvent. In that event, proceeds are to be paid to the insolvent company's receiver.[4]

The contract states that "[i]n no instance shall any insured of the Company or any claimant against an insured of the company have any rights under this Agreement." The parties agree that the contract was intended to be interpreted in accordance with Missouri law. Of course, we are bound by Missouri law in this action.

■ The straightforward language of the contract is buttressed by the acknowledged general rule that an original insured may not bring an action against a reinsurer because of the absence of privity of contract. *O'Hare v. Pursell*, 329 S.W.2d 614, 620 (Mo. 1959). This is true even if the reinsured insurance company becomes insolvent.

The Missouri courts have articulated an exception to this general rule by holding that "a reinsurance contract may be drawn in such form and with such provisions so as to create a liability on the part of the reinsurer directly to the original insured."

*First National Bank of Kansas City v. Higgins*, 357 S.W.2d 139, 143 (Mo. banc 1962). On its face this rule also seems reasonable. The rub comes because the Missouri courts repeatedly have stretched contractual language which rather clearly was meant to limit the reinsured's liability to an original insured to the extent of the liability that the reinsured insolvent company might suffer. Instead, the Missouri courts have held that the language of the agreement was intended to make the reinsurance company liable to the original insured on a third-party beneficiary theory.

For example, in *Higgins, supra*, the following language was held to create third-party liability:

> [The] *liability* of [the reinsurer] shall *follow* that of [the reinsured] in every case and be *subject in all respects* to all of the general and special stipulations, clauses, waivers, and modifications of [the reinsured's] policy, binder, or other undertaking or any endorsements thereon . . .

357 S.W.2d at 144 (emphasis supplied by court).[5]

Similarly, in *Homan v. Employers Reinsurance Corp.*, 345 Mo. 650, 136 S.W.2d 289, 298 (1939), the words "each reinsurance thereunder should be 'subject to' all the general and special terms and conditions of the policies and endorsements" were held to make the reinsurer liable to the original insured.

■ The Mississippi Association cites several sections of the reinsurance agreement which it argues create a third-party beneficiary liability to the underlying policyhold-

---

3. *Article I—SCOPE OF AGREEMENT*

This Agreement is solely between the Company and the Reinsurer. Performance of the respective obligations of each party under this Agreement shall be rendered solely to the other party; however, in the instance of the insolvency of the Company, the liability of the Reinsurer shall be modified to the extent set forth in Article IX entitled "Insolvency of the Company." *In no instance shall any insured of the Company or any claimant against an insured of the Company have any rights under this Agreement.* (Emphasis added).

4. In the event of the insolvency of the Company the reinsurance afforded by this Agreement shall be payable by the Reinsurer on the basis of the liability of the Company under the policy or policies reinsured, without diminution because of such insolvency, directly to the Company or its liquidator, receiver or statutory successor.

5. Three judges dissented from this decision.

**4**

ers,[6] but only one section of the contract is remotely similar to the liability-creating clauses cited in the above Missouri cases. Article IX of the Agreement provides that "[i]n the event of the insolvency of the Company the reinsurance . . . shall be payable by the Reinsurer *on the basis of the liability of the Company . . .*" (emphasis supplied). It would be anomalous to weave third-party beneficiary liability out of this thread, however. This language is required to be in the contract by the Missouri Insolvency Clause Statute in order for the reinsurance to be an asset or a deduction from liability in the insurance company's accounting. Mo.Ann.Stat. § 375.246 (Vernon's 1967). Moreover, that clause of the contract goes on to provide that the proceeds of the reinsurance are to be paid to the receiver of the insolvent company, not a third-party beneficiary.

We find and conclude that the reinsurance agreement in this case mandates that the reinsurance proceeds should be payable only to the receiver and clearly denies any liability to an alleged third-party beneficiary. We do not believe that in the face of such clear contractual language a Missouri court would construe the language of the contract to find an intention to create liability to an original insured. The cases cited by the Mississippi Association are distinguishable on their facts and on the contractual language construed therein.

■ We also agree with the receiver that this interpretation of the contract reinforces the comprehensive Missouri statutory scheme for winding up the affairs of insolvent insurance companies. *See* Mo.Ann. Stat. §§ 375.560–375.780 (Vernon's 1968, Supp. 1977). The Missouri legislature has evidenced an intent to treat all creditors of

insolvent insurance companies similarly. It is not for this Court to frustrate that intent under the guise of contractual interpretation.

Finally, this interpretation accords with the weight of authority in other jurisdictions and makes for uniform construction of standard agreements of reinsurance. *See, e. g., General Reinsurance Corp. v. Williams,* Civil No. 75–1336 (S.D.N.Y., Mar. 23, 1976). For all these reasons, we find and conclude that the proceeds of the reinsurance agreement should be paid to Missouri General's receiver under the contract.

The Association, however, presents two more arguments which merit attention.

## II. *Liability Under Mississippi Statutes*

■ Preliminarily, we again would note that we are bound to apply Missouri law in this case. The Association, though, has offered no Missouri authority suggesting that the Mississippi statutes it cites are applicable to this transaction. On the assumption that the statutes would apply, we find and conclude that they do not entitle the Association to the proceeds of the reinsurance agreement.

The Association argues that it is entitled to the reinsurance proceeds by virtue of Miss.Code Ann. § 83–23–115(1)(b) (1972). That statute provides that in the event of the insolvency of an insurance company doing business in Mississippi, the Association shall:

Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

---

6. All payments of claims or losses by the Company *within the limits of liability or amounts of insurance of the policy(ies) of the Company* and within the limits of liability or amounts of reinsurance . . . shall be binding on the Reinsurer, subject to all the terms, conditions and limitations of this Agreement.

   *   *   *   *   *   *

   When requested by the Reinsurer, the Company shall permit the Reinsurer, at the

expense of the Reinsurer, to be associated with the Company *in the defense or control of any claim, loss or legal proceeding* which involves or is likely to involve the Reinsurer.

   In Article VII of the Agreement, General Reinsurance reserves the right to inspect "[a]ll records of the Company with respect to the business reinsured under this Agreement, or with respect to claims, losses or legal proceedings which involve or are likely to involve the Reinsurer."

We disagree with the Association's contention that this statute makes it the "statutory successor" of Missouri General and therefore entitled to the reinsurance proceeds. We agree with the receiver's argument that the purpose of this section is to allow the Association to assert any defenses on a policy which the insolvent insurer would have been entitled to assert.

Moreover, another Mississippi statute indicates that that state's legislature did not intend to give the Association any priority over other creditors in the pursuit of reinsurance proceeds. Miss.Code Ann. § 83–23–121(2) states that the claims of the Association shall receive no greater priority than other claims in the insolvency proceedings by virtue of the Mississippi Act. Accordingly, the statutes of Mississippi as well as the reinsurance agreement entitle the receiver to the reinsurance proceeds.

### III. *"Public Policy" Liability*

Finally, the Association argues that since it paid $150,000 to Hattie Keeton, "public policy dictates" that the reinsurance proceeds should be paid to it. The Association cites no authority for this proposition. Neither does it give us any reason to believe that the public policy of Missouri is not set forth by the comprehensive scheme of legislation governing the insolvency of an insurance company which, as we noted above, anticipates that the reinsurance proceeds should be paid to the receiver. We find and conclude that Missouri law does not support the Association's public policy argument.

In conclusion, we find and conclude that the agreement of reinsurance between General Reinsurance and Missouri General provides that under the stipulated facts the receiver of Missouri General is entitled to the interpleaded funds and that this distribution is in accordance with and required by Missouri law. Accordingly, it is

ORDERED (1) that within twenty (20) days, General Reinsurance Company shall prepare and file a form of final judgment which, *inter alia*, pays the interpleaded funds to the receiver for Missouri General Insurance Company. This final judgment shall have been approved as to form by counsel for the other parties to this litigation.