**C. Donald AINSWORTH, as Successor to William Arthur Jones, Richard J. Frederick et al., Appellee,**

v.

**GENERAL REINSURANCE CORPORATION, Appellant.**

No. 83–1892–WM.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1984.

Decided Jan. 9, 1985.

James H. Horn (Argued), James Bandy, Kansas City, Mo., for appellant.

John C. Craft (Argued), William C. Jolley, Jr., Kansas City, Mo., for appellee.

Before LAY, Chief Judge, FAIRCHILD *, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

This is an appeal from a judgment holding a reinsurer (General Reinsurance Corporation) liable to the receiver of an insolvent insurance company (Medallion) for the reinsured amount of insured liability, under a so-called insolvency clause of a reinsurance agreement. Federal court jurisdiction is based on diversity, and the parties agree that the law of Missouri governs substantive questions.

**I**

On January 1, 1971, General Reinsurance entered into Agreement of Reinsurance No. 4191 with Medallion and its subsidiaries, among them Consolidated Underwriters. In late 1972, Medallion assumed all assets and liabilities of Consolidated Underwriters.

Medallion subsequently experienced financial difficulties. On September 12, 1975, the companies were formally declared insolvent and ordered liquidated by the Circuit Court of Jackson County, Missouri. In the present action Medallion's court appointed Receiver recovered for liability incurred by two companies insured by Consolidated Underwriters: Pittsburgh and New England Trucking Company ("P & NE") and B-K Cattle Company ("B-K"). The liabilities arose out of accidents involving company trucks. The parties agree

---

* Thomas E. Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

that these accidents constitute "loss occurrences" covered under Agreement of Reinsurance No. 4191 and the insured liabilities remained unpaid at the time Medallion was declared insolvent.

Article IX of the Agreement of Reinsurance, the insolvency clause, provided as follows:

> In the event of the insolvency of the Company the reinsurance afforded by this Agreement shall be payable by the Reinsurer on the basis of the liability of the Company under the policy or policies reinsured, without diminution because of such insolvency, directly to the Company or its liquidator, receiver or statutory successor. The Reinsurer shall be given written notice of the pendency of each claim or loss which may involve the reinsurance afforded by this Agreement within a reasonable time after such claim or loss is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim or loss and interpose, at its own expense, in the proceeding where the claim or loss is to be adjudicated, any defense which may deem available to the Company or its liquidator, receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable subject to Court approval against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

It is clear that this clause was inserted in response to a Missouri statute, § 375.246 RSMo, requiring, similarly to law in many states, that reinsurance must not be treated as an asset or deduction from liability of an insurance company unless the reinsurance is payable "without diminution because of the insolvency of the ceding company."

## A. P & NE Loss

On December 9, 1974, plaintiffs Ernest and Alice Nemeth won a jury verdict and money judgment against P & NE in the amount of $485,000 for personal injuries and damages suffered in an accident in West Virginia. Following notice of the insolvency, P & NE sought payment of the judgment from Medallion's Receiver and General Reinsurance. Attorneys for General Reinsurance responded in a March 12, 1976 letter that:

> The commissioner of claims and the attorney for Medallion Insurance Company has taken the position that the reinsurance assets belong to the receiver for the benefit of general creditors and that my client, General Reinsurance Corporation, cannot legally make payments to any claimant or insuror.
>
> Because of the position taken by the attorney for the receiver and the commissioner of claims and the agreement of the reinsurance treaty, we are certainly not in a position to make any payment to the plaintiff or to your client in this suit.

The attorneys again wrote P & NE in April 1976 that:

> [I]t appears to General Reinsurance that the agreement does not provide any means, method, nor language which would warrant payment to you and your client of any sums claimed by your client by reason of judgment or otherwise. The language of the reinsurance agreement seems clear. It would appear that our obligation is solely to the representatives of Medallion Insurance Company, now in receivership.

The position taken in these letters is clearly consistent with Article IX, the insolvency clause, and the underlying statutory requirement. Changing its position, however, General Reinsurance later negotiated and paid the Nemeths and P & NE $25,000 for a release discharging Medallion and its Receiver from all liability arising out of the accident. The Receiver did not participate in the negotiations or settlement of the P & NE case.

The district court concluded that the liability of P & NE to the Nemeths, insured up to policy limits by Consolidated (and Medallion), gave rise to a right of Medallion to proceeds of reinsurance and that

such right vested in the Receiver when Medallion was declared insolvent. General Reinsurance was without authority to negotiate a settlement altering that right. In accordance with this holding, the court awarded the Receiver $89,557.53, plus interest from the date of insolvency.[1]

### B. B–K Loss

The other loss occurrence concerned a 1972 accident in Texas involving a B–K truck. Plaintiffs in that suit agreed to a court-approved settlement of $85,000 on December 28, 1976. The Texas ancillary receiver of Medallion paid $50,000; B–K contributed $10,000; and B–K's excess insurance carrier contributed $25,000.

General Reinsurance made a payment to the Receiver, apparently on the theory that the settlement determined $50,000 as the amount of insured liability. General's payment represented $50,000, less the amount of retention, and other adjustments not relevant to the issue in this case. Although the Receiver originally contended that the appropriate amount of insured liability was $100,000, the policy limit, he ultimately conceded that the settlement determined liability at $85,000, and claimed that amount less the amount of retention. The district court entered judgment reflecting the latter theory.

### II

The insolvency clause appears to require that when the insurer becomes insolvent the reinsurer's obligation with respect to an outstanding liability insured by the insurer becomes an asset of the insolvency estate. The amount of the obligation is not to be diminished because of the insolvency. The central issue in this case is whether the reinsurer may reduce or eliminate its obligation by making a settlement directly with the insured and those to whom the insured is liable. General Reinsurance would contend that because the direct set-tlement discharges the liability of the insurer, fully in a case like P & NE or partially in a case like B–K, and obviates any determination of a claim of liability in the insolvency proceeding, General's obligation is similarly discharged. We think the result contended for is inconsistent with the insolvency clause. It seems very clear that the payment has not been made directly to the Receiver, that the reinsurance has been diminished because of the insolvency, and the obligation of the reinsurer has ceased to be an asset of the insolvent estate.

Clearly the reinsurer has a right to defend against a claim on its merits, but is not given a right to reduce its obligation by taking advantage of the willingness of the insured and the insured's obligee to take less because of the insolvency.

We begin with the general principle that the beneficiary of the reinsurance agreement is usually the insurer (the reinsured) and not the insured under Missouri law. "An ordinary contract of reinsurance, in the absence of provisions to the contrary, operates solely as between the reinsurer and the reinsured. It creates no privity between the original insured and the reinsurer." *First National Bank of Kansas City v. Higgins*, 357 S.W.2d 139, 142 (Mo.1962) (quoting *O'Hare v. Pursell*, 329 S.W.2d 614, 620 (Mo.1959)). "[T]he liability of the reinsuring company is solely to the reinsured company, or to its receiver in the event of its insolvency." *Higgins*, 357 S.W.2d at 143. The only exception to this general rule occurs when the reinsurance contract is "drawn in such form and with such provisions so as to create a liability on the part of the reinsurer directly to the original insured." *Higgins*, 357 S.W.2d at 143. Contrary to General Reliance's assertions, this exception is inapplicable to the Agreement of Reinsurance No. 4191. The same agreement of reinsurance has been considered by Chief Judge Oliver of

---

**1.** Medallion's policy limit on liability to P & NE was $100,000 plus interest. The retention under the reinsurance agreement was $25,000. The award above represents General's $75,000 expo-sure plus interest and expenses, and the amount was not disputed before the district court or on appeal.

the same district court, and by this court on appeal. In *General Reinsurance Corp. v. Missouri Gen. Ins.*, 458 F.Supp. 1 (W.D. Mo.1977), there was a claim to reinsurance proceeds upon a theory that a claimant is a third-party beneficiary of the reinsurance agreement. Agreements in some forms have been held in Missouri to create such a right. In rejecting the theory, Judge Oliver emphasized the clarity of the requirement of this agreement that the proceeds are to be paid to the receiver of the insolvent company. 458 F.Supp. at 4. This court affirmed on the basis of the district court opinion, adding our own emphasis on another provision as compelling rejection of a third-party beneficiary theory. *General Reinsurance Corp. v. Mo. General Ins. Co.*, 596 F.2d 330 (8th Cir.1979).

The Missouri Supreme Court held in *Homan v. Employers Reinsurance Corp.*, 345 Mo. 650, 136 S.W.2d 289 (1939), that "upon the insolvency of the insurer, the proceeds of the reinsurance are assets to be distributed generally amongst its creditors." 136 S.W.2d at 296.

The principal argument of General Reinsurance on appeal is that the Receiver has no right to reinsurance proceeds under Agreement No. 4191 until the claim is allowed by the commissioner of claims pursuant to Mo.Ann.Stat. § 375.670. (Vernon's 1968). The P & NE claim was withdrawn after settlement, and apparently no claim was filed with respect to the B–K loss.

■ We do not think that the portion of the insolvency clause making reference to claims supports General's position. Nor does § 375.670 address the liability of a reinsurer to an insolvent insurer. Further, General's interpretation runs counter to the holding of the Missouri Supreme Court in *Clay v. Independence Mutual Insurance Co.*, 359 S.W.2d 679 (Mo.1962), that the appointment of the Superintendent of Insurance as receiver of an insolvent insurance company was, in effect, "an adjudication of insolvency by which the rights of the receiver became fixed." 359 S.W.2d at 683–84. In *Clay*, the court considered an action by the Superintendent to recover premiums held by an agent of an insolvent insurance company at the time the company was placed in receivership. The agent used the premiums to purchase alternative coverage for the policyholders. The court concluded that to permit the agent to use the premiums "to purchase other insurance for these policyholders would result in refunds in full to the policyholders, thus creating a preference over other insureds and creditors." 359 S.W.2d at 684.

The same concerns that prompted the *Clay* court to fix assets due an insolvent corporation in the hands of agents dictate a limit on General's right to settle claims without the participation of Medallion's Receiver. Indeed, without such a limit the potential exists for reinsurers not only to deny general creditors their acknowledged interest in reinsurance proceeds but also, at the same time, a reinsurer would be able to make cheap settlements with insureds facing the prospect of low dividends on their allowed claims.

Admittedly, where the reinsurer settles directly and obviates the determination of liability and its amount through claims procedure, there will arise questions as to proper valuation of outstanding tort claims. But it is the reinsurer's attempt to take advantage of the insolvency which causes the difficulty. The judgment in the P & NE case pretty solidly determined the liability of Medallion for $100,000. Although the settlement in the B–K case, including the payment by the excess carrier, may not be an exact valuation of Medallion's liability for the B–K loss, it provides the best approximation available.

Accordingly, the judgment of the district court is **AFFIRMED**.