**ALLENDALE MUTUAL INSURANCE COMPANY, et al., Plaintiffs,**

v.

**Lewis R. CRIST, et al., Defendants.**

**No. 87–4450–CV–C–9.**

United States District Court,
W.D. Missouri, C.D.

Oct. 31, 1989.

Thomas N. Sterchi, Baker & Sterchi, Kansas City, Mo., for plaintiffs.

Michael L. Parrish, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for Lewis Melahn.

Joel R. Mosher, R. Lawrence Ward, Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., Andrew L. Symons, Ferguson & Burdell, Seattle, Wash., for Fifteen–O–One Fourth, and Sellen Const.

Daniel W. Unti, Carney, Stephenson, Badley, Smith, Mueller & Spellman, Seattle, Wash., for Western Bridge Co.

Charles E. Yates, Mikkelborg, Broz, Wells, Fryer & Yates, Seattle, Wash., for Washington Ins. Guar.

Bruce E. Baty, Michael L. Parrish, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for Lewis R. Crist.

ORDER GRANTING IN PART PLAINTIFFS' AND DEFENDANT LEWIS R. CRIST'S MOTIONS FOR SUMMARY JUDGMENT AND ALLOWING FURTHER DISCOVERY ON ONE ISSUE

BARTLETT, District Judge.

This is an interpleader action brought by the reinsurers of Transit Casualty Company (Transit). At issue is who is entitled to the proceeds of certain reinsurance agreements between plaintiff reinsurers and Transit. Defendant Lewis R. Crist, who is the Director of the Division of Insurance for the State of Missouri and who is the receiver for Transit, claims that he has the exclusive right to the reinsurance proceeds. Defendants Sellen Construction Company, Inc. (Sellen) and Fifteen–O–One Fourth Avenue Limited Partnership (FFA), who were insured by Transit and who claim to have suffered a loss, seek to obtain directly from the reinsurers the proceeds of the reinsurance contracts between the reinsurers and Transit. Both the plaintiff reinsurers and Crist filed motions for summary judgment arguing that the reinsurance proceeds are payable to Crist only and that Sellen and FFA have no direct claim against the reinsurers.

A hearing on the plaintiffs' and Crist's motions for summary judgment was held on May 31, 1989.

The issue in this case is whether Crist is the beneficiary of the reinsurance proceeds or whether Sellen and FFA are third-party beneficiaries of the reinsurance agreements with a direct action against the reinsurers to recover the reinsurance proceeds.

I. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 727–28 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts

showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.*, 106 S.Ct. at 2511. The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

## II. *Discussion*

### A. *The Reinsurance Agreements Do Not Create Liability Directly to Original Insureds*

Under Missouri law, the beneficiary of reinsurance is usually the reinsured (insurer) and not the original insured. *Ainsworth v. General Reinsurance Corp.*, 751 F.2d 962, 965 (8th Cir.1985).

In *O'Hare v. Pursell*, 329 S.W.2d 614, 620 (Mo.1959), the court stated:

An ordinary contract of reinsurance, in the absence of provisions to the contrary, operates solely as between the reinsurer and the reinsured. It creates no privity between the original insured and the reinsurer. The contract of insurance and the contract of reinsurance are totally distinct and unconnected.... Upon the insolvency of the insurer the proceeds of the reinsurance become assets to be distributed generally among the creditors and the original insured has no equitable claim upon them. The liability of the

reinsurer is solely and exclusively to the reinsured. The reinsurer has no contractual obligation with the original insured and is not liable to him. In the absence of statutory restrictions, however, reinsurance contracts may be drafted in such a form as to create a liability on the part of the reinsurer not only to the reinsured primitive insurer but also in favor of the original insured.

*Id.* (citations omitted).

In *First National Bank of Kansas City v. Higgins*, 357 S.W.2d 139, 143 (Mo.1962), the court stated:

Whether the reinsurance contract is for indemnity against loss or against liability, the liability of the reinsuring company is solely to the reinsured company, or to its receiver in the event of its insolvency. However, in the absence of statutory restrictions, and there are none in this case, a reinsurance contract may be drawn in such form and with such provisions so as to create a liability on the part of the reinsured directly to the original insured. For example, see *Homan v. Employers Reinsurance Corporation*, 345 Mo. 650, 136 S.W.2d 289, 127 A.L.R. 163; and *O'Hare v. Pursell*, supra. See also 46 C.J.S. Insurance § 1224a, and the cases cited in 35 A.L.R. at page 1351 and 103 A.L.R. at page 1488. Such liability necessarily must be based on the theory that the original insured is a third party beneficiary of the reinsurance agreement.

In *Ainsworth*, the court stated that creating liability on the part of the reinsurer directly to the original insured is the "only exception" to the general rule that a reinsurer's liability is to the reinsured. *Ainsworth*, 751 F.2d at 965.

In *Laclede Investment Corp. v. Kaiser*, 596 S.W.2d 36 (Mo.App.1980), the court cautioned that the terms of the reinsurance contract must directly and clearly create third-party liability:

The contract terms must clearly express that the contracting parties intended the third party to be the beneficiary of performance of the contract and have the

right to maintain an action on the contract. *Uhrich v. Globe Surety Co., supra* [191 Mo.App. 111, 166 S.W. 845 (1914)]; *Burns v. Washington Savings,* 251 Miss. 789, 171 So.2d 322 (1965); *Computer Center, Inc. v. Vedapco, Inc.,* 320 So.2d 404 (Fla.App.1975). Though the third party beneficiary need not be named in the contract, the terms of the contract must express directly and clearly, an intent to benefit the specific party or an identifiable class of which the party asserting rights as a third party beneficiary is a member. Inasmuch as people usually contract and stipulate for themselves and not for third persons, a strong presumption arises that such was their intention, and the implication to overcome that presumption must be so strong as to amount to an express declaration. *Ison v. Daniel Crisp Corp.,* 146 W.Va. 786, 122 S.E.2d 553 (1961); *Martin v. Edwards,* 219 Kan. 466, 548 P.2d 779 (1976). In other words, the court may not speculate from the language in the contract that the contracting parties wanted to make the plaintiff a third party beneficiary.

*Id.* at 42 (footnotes omitted).

In *O'Hare, Higgins* and *Homan v. Employers Reinsurance Corp.,* 345 Mo. 650, 136 S.W.2d 289 (1940), the reinsurance contracts created liability on the part of the reinsurer directly to the original insured. In this case, Sellen and FFA compare language from the reinsurance contracts in *Homan, O'Hare* and *Higgins* with language from the reinsurance contracts in the instant case. Sellen and FFA then argue that because of the similarity in language, the reinsurers here are directly liable to Sellen and FFA. *See* Sellen and FFA's Joint Response in Opposition to Plaintiffs' Motion for Summary Judgment at 13–21.

■ However, Sellen and FFA have failed to establish that the reinsurance agreements directly and clearly create third-party liability because certain language specifically excluded third-party liability. *See* Plaintiffs' Reply Brief at 12–15. Each of the four reinsurance treaties contains a clause stating that original insureds are not third-party beneficiaries unless an original insured was specifically identified as a beneficiary of the reinsurance contract.

It is further agreed and understood that in the event of insolvency of the Company the reinsurance under this Agreement shall be payable by the Reinsurer directly to the Company, or to its liquidator, receiver or statutory successor, ... except (a) where the Agreement specifically provides another payee of such reinsurance in the event of the insolvency of the Company and (b) where the reinsurer with the consent of the direct insurer or insureds has assumed such policy obligations of the Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of the Company to such payees.

This clause was not present in the reinsurance contracts in *Homan, O'Hare* and *Higgins.* Sellen and FFA were neither named as payees of the reinsurance nor did the reinsurers assume direct obligations to Sellen and FFA. Therefore, the four reinsurance treaties operate solely between the reinsurer and the reinsured.

Similarly, the language of each of the facultative certificates expressly excludes third-party liability. The Imperial Facultative Certificate states in part: "In no event shall anyone other than the Company or, in the event of the Company's insolvency, its receiver, liquidator or statutory successor have any rights under this agreement."

The Allstate Facultative Certificate contains the following language: "Except as provided by the insolvency clause and any amendments thereto, the obligations under this certificate shall run to the Company and Allstate shall have no obligation to the original insured or anyone claiming under the policy (IES) reinsured." Nothing in the insolvency clause conflicts with this prohibition of a direct obligation to an original insured.

The American Reinsurance Facultative Certificate states: "Nothing contained herein shall in any manner create any obli-

gations of the Reinsurer or establish any right against the Reinsurer in favor of the original insured or any third parties or any persons not parties to this Certificate of Reinsurance."

The Gerhling Global Facultative Certificate contains the following clause:

> The reinsurance provided by the Certificate shall be payable by the Reinsurer directly to the Company or to its liquidator, receiver or statutory successor on the basis of the liability of the Company under the policy reinsured without diminution because of the insolvency of the Company.... The reinsurance shall be payable as hereinbefore in this paragraph provided except (a) where the Certificate specifically provides another payee of such reinsurance in the event of the insolvency of the Company and (b) where the Reinsurer with the consent of the direct insured or insureds has assumed such policy obligations of the Company as direct obligations of the reinsurer to the payee under such policy in substitution for the obligations of the Company to such payee.

The Philadelphia Manufacturer's Facultative Certificate expresses the same concept but in different language:

> In the event of insolvency of the Company, the terms of this Certificate are amended to conform to the statute of any state of the United States having jurisdiction to the extent that such reinsurance as is afforded hereunder may be credited to the Company *as an admitted asset or deduction from liability,* it being understood that, subject to such amendment, the reinsurer can avail itself of any other provision of any such statute applicable. (Emphasis added.)

As recognized by Sellen and FFA at page 18 of their brief, this clause was designed to assure that the reinsurance proceeds would be considered *assets of the reinsured company.* In *Higgins,* the court stated that the determination of who is entitled to proceeds under a reinsurance agreement upon insolvency of the reinsured company depends upon whether the policyholders of the reinsured company were established by the reinsurance agreement as third-party beneficiaries or "whether the proceeds of the reinsurance constitute assets of the insolvent" insurer. *Id.* at 144. Inasmuch as the Philadelphia Manufacturer's Certificate expressly designated the proceeds as assets of the insurance company, no third-party beneficiary could be or was created.

For the reasons stated in *General Reinsurance Corp. v. Missouri Gen. Ins.,* 458 F.Supp. 1 (W.D.Mo.1977), *aff'd,* 596 F.2d 330 (8th Cir.1979), and in Plaintiffs' Reply Brief in Support of Motion for Summary Judgment at 17–29, neither the wording of the insolvency clauses of certain of the reinsurance agreements nor the follow-the-fortunes clause appearing in all but two of the reinsurance agreements create liability on the part of the reinsurers directly to any original insured.

B. *Sellen and FFA Have Not Shown That There is a Dispute of Material Fact Although Further Discovery Will be Permitted on One Issue*

■ Sellen and FFA argue that the actions of the reinsurers made Sellen and FFA third-party beneficiaries of the reinsurance agreements.

> The specific conduct and course of performance which Sellen and FFA can at this time point to includes the fact that less than one percent of the policy was retained by Transit, with the rest ceded to reinsurers. Further, in procuring the policy, all dealings were with NUA. NUA had full authority to write insurance policies (up to $25 million) with Transit's name on them, provided that at least 90% of any policy written was reinsured. All premium payments were made to NUA, and Transit received premiums only on its retention plus its commission. Of the $1,066,000 received by Sellen and FFA on the loss, the entire amount was paid by reinsurers through an intermediary and at least one reinsurer made an "unusual" request to review the adjustor's reports. None of the reinsurance proceeds went to Transit, but were instead sent directly to Sellen and FFA. A letter from Sutherland & Page

clearly indicates that Sutherland & Page was acting as a clearinghouse which consolidated the individual assessments of some one hundred reinsurers into checks which were then sent to Sellen and FFA. No payments were made to Sellen and FFA except for amounts paid by the reinsurers. Transit was not involved in these transactions, and Transit never received (or even processed) any reinsurance proceeds.

*Id.* 458 F.Supp. at 32–33.

Sellen and FFA have presented no persuasive authority for the proposition that the reinsurers' conduct can create liability on the part of the reinsurer directly to the original insured. At the summary judgment hearing and in their brief, Sellen and FFA rely on *O'Hare* and *Homan.* However, in those cases, a claim directly by the original insured against the reinsurers was created by the language of the reinsurance contracts. Neither *O'Hare* nor *Homan* suggests that direct liability to an original insured can be created only by acts of the reinsurers absent language in the reinsurance contract creating direct liability. Standing alone, what a reinsurer does about paying claims has no bearing on whether the reinsurer is directly liable to the original insured.

■ Also, Sellen and FFA assert that the reinsurers and Transit entered into a novation under which the reinsurers assumed direct liability to Sellen and FFA.

Sellen and FFA properly present discovery responses stating that payments on their claims under the Transit policy were paid by companies other than Transit before Transit's insolvency. This fact *could be* consistent with Transit and the reinsurers having entered into an agreement modifying or replacing the reinsurance agreements. The new agreement or agreements could have made the original insureds of Transit third-party beneficiaries and created direct liability to Sellen and FFA. In order to provide Sellen and FFA an opportunity to conduct discovery *on this issue only,* which they claim they have been denied, the parties will be required to submit a proposed discovery schedule complying with Local Rule 15N. Discovery on the novation issue should be restricted to what is necessary to determine if there is a genuine issue for trial on the novation claim. If there is, full discovery will be allowed on that issue at a later date.

## III. *Conclusion*

For the reasons stated, the reinsurance contracts presented to me do not create liability on the part of any reinsured directly to Sellen and FFA. Therefore, Sellen and FFA have no direct claim against the reinsurers under those contracts. Furthermore, Sellen and FFA have not provided authority supporting their theory that direct liability to them can be created by the acts of reinsurers in paying claims. However, Sellen and FFA will be granted the opportunity to establish that there is a genuine issue for trial on their novation theory.

Accordingly, it is hereby ORDERED that:

1) plaintiffs' motion for summary judgment is granted on all issues except the issue of whether there was a novation creating a direct claim by Sellen and FFA against the plaintiff reinsurers;

2) defendant Crist's motion for summary judgment is granted on all issues except the issue of whether there was a novation creating a direct claim by Sellen and FFA against the plaintiff reinsurers; and

3) within 15 days from the date of this order, the parties shall submit a proposed discovery schedule in compliance with Local Rule 15N for discovery only on the issue of whether there was novation creating a direct claim by Sellen and FFA against the plaintiff reinsurers.