[995 NYS2d 35]

OneBeacon America Insurance Company, Plaintiff/ Counterclaim Defendant, v Colgate-Palmolive Company, Defendant/Counterclaim Plaintiff-Respondent, et al., Defendants. National Indemnity Company et al., Counter- claim Defendants-Appellants.

First Department, October 28, 2014

**APPEARANCES OF COUNSEL**

*Simpson Thacher & Bartlett LLP*, New York City (*Michael J. Garvey, Bryce L. Friedman, Mary Beth Forshaw* and *Summer Craig* of counsel), for appellants.

*Anderson Kill P.C.*, New York City (*William G. Passannante* of counsel), for respondent.

### · OPINION OF THE COURT

FREEDMAN, J.

In this dispute between plaintiff OneBeacon America Insurance Company (OneBeacon) and its insured, defendant counterclaim plaintiff Colgate-Palmolive Company (Colgate), counterclaim defendant National Indemnity Company (NICO), OneBeacon's reinsurer, and its affiliated claims adjuster, counterclaim defendant Resolute Management, Inc. (Resolute), appeal from an order partially denying their motion to dismiss all of the counterclaims asserted against them pursuant to CPLR 3211 (a) (7). Based on the total absence of a contractual relationship between Colgate and the counterclaim defendants, we reverse and dismiss the remaining counterclaims.

The underlying dispute between Colgate and OneBeacon arose over OneBeacon's right, under the more than 50 primary and

excess liability policies it issued to Colgate (the policies),[1] to control Colgate's defense against more than 20 lawsuits alleging personal injury caused by exposure to Colgate's talc products, which allegedly contained asbestos (the talc cases). OneBeacon alleges that Colgate has not allowed it to control the defense of these cases, rejected the defense counsel and strategy that One-Beacon selected, and insisted on selecting its own independent counsel.

In March 2013, OneBeacon filed this action, seeking, among other things, a declaration that under the policies at issue, One-Beacon has the exclusive right to control Colgate's defense and choose its counsel. OneBeacon further seeks a declaration that it is not obligated to indemnify Colgate in any talc cases that Colgate defends, settles, or tries without OneBeacon's consent.

Colgate counterclaimed against OneBeacon and joined NICO and Resolute as counterclaim defendants. Only the counter-claims against NICO and Resolute are before us.[2] Colgate alleges that OneBeacon's contractual relationship with NICO and Resolute created a conflict of interest because they serve a dual role as both the reinsurer of OneBeacon's liability under the policies and the claims adjuster under those policies. Colgate asserts, among other things, that although it wants to vigorously defend the talc cases to deter copycat lawsuits, NICO and Reso-lute want to settle the cases to minimize the legal expenses.

The relevant, undisputed facts are as follows: during an extended period ending in 1983, the policies were either purchased directly from OneBeacon or from two of its pred-ecessors.[3] In 2001, OneBeacon and NICO entered into an Aggre-gate Loss Portfolio Reinsurance Agreement (the Reinsurance Agreement) and a related Administrative Services Agreement (the Services Agreement). Under the Reinsurance Agreement, in exchange for a $1.25 billion premium, NICO agreed to provide OneBeacon with $2.5 billion of reinsurance coverage for the carrier's liability under the policies. The coverage encompassed OneBeacon's liability for Colgate's "asbestos related losses."

The Reinsurance Agreement further provided that, in accord-ance with the Services Agreement, OneBeacon appointed NICO "to perform all administrative services" connected with the

---

1. The policies are not in the record.

2. OneBeacon has filed a separate appeal but the counterclaims against the insurer are not before us.

3. Henceforth the two predecessors will also be referred to collectively as OneBeacon.

policies, including the settlement or payment of the reinsured claims. Finally, the Reinsurance Agreement stated that it was an indemnity insurance agreement solely between OneBeacon and NICO, and that no one other than those two parties had any rights under the contract.

In 2004, NICO and Resolute entered into an Intercompany Service Agreement (Intercompany Agreement), under which Resolute agreed, while acting as NICO's agent, to adjust Colgate's claims under the policies. The Intercompany Agreement also provided that it could not be assigned and that NICO and Resolute did not intend the contract to confer any rights on third parties.

In 2008, the first talc case was filed in Supreme Court, New York County. After Colgate notified OneBeacon about the lawsuit, Resolute responded to Colgate by letter stating that it was handling the coverage claims on OneBeacon's behalf. Colgate objected and engaged counsel without consulting OneBeacon. Thereafter, OneBeacon commenced this action and Colgate counterclaimed.

On appeal, five of Colgate's counterclaims are before us: a counterclaim against Resolute for a declaration that it is entitled to independent counsel and that Resolute is prohibited from obstructing its defense of the talc cases (first counterclaim); a breach of contract claim against NICO (third); a claim for tortious interference with contract against Resolute (fifth); a claim for breach of the implied covenant of good faith and fair dealing against NICO (seventh); and a statutory claim against Resolute for violation of Massachusetts General Law, chapter 93A (ninth).[4]

We find that none of these counterclaims states a cause of action. Turning to the breach of contract counterclaim against NICO, Colgate alleges that, by entering into the Reinsurance Agreement, OneBeacon either assigned its rights and obligations under the policies to NICO, or NICO assumed those rights and obligations. According to Colgate, NICO thereby became contractually obligated to it as the insured and NICO breached its contractual obligations by refusing to acknowledge Colgate's choice of counsel and refusing to pay the legal fees.

■ Colgate's claims raise the issue of whether an insurance policyholder has rights against its carrier's reinsurer, if the

---

4. Colgate also asserts the first and ninth counterclaims as against One-Beacon, which, as noted, has filed a separate appeal.

reinsurer administers the insured's claims under the policy. In a typical reinsurance arrangement, where the carrier administers claims and the reinsurer merely indemnifies it in accordance with the "follow the fortunes" doctrine (*see United States Fid. & Guar. Co. v American Re-Ins. Co.*, 93 AD3d 14, 23 [1st Dept 2012], *mod* 20 NY3d 407 [2013]), the insured can only state viable claims against the reinsurer in specific circumstances that do not pertain here. In this case, Colgate only holds the policies with OneBeacon. The carrier's reinsurer, NICO, and its affiliate, Resolute, both adjust Colgate's policy claims and indemnify OneBeacon for claim payouts. NICO's and Resolute's dual role does not, however, give rise to any liability to Colgate because Colgate lacks contractual privity with NICO and Resolute. In the absence of privity, Colgate's breach of contract claims against NICO and Resolute fail.

The Reinsurance Agreement, which is a contract only between NICO and OneBeacon, is separate and distinct from the underlying policies (*see Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d 576, 582 [1992]). Colgate lacks standing to state a claim against NICO for breach of the underlying policies because NICO is not a party to those contracts (*see id.* at 583; *Aces Mech. Corp. v Cohen Bros. Realty & Constr. Corp.*, 136 AD2d 503, 504 [1st Dept 1988] [finding "no basis for holding the . . . defendant liable for the breach of a contract to which it was not a party"]).

Colgate claims that NICO is liable under the policies because either OneBeacon "assigned" contractual rights and obligations under the policies to NICO, or NICO assumed obligations under the policies. But nothing in the Reinsurance Agreement suggests an assignment or assumption. Rather, the contract indicates OneBeacon's appointment of NICO as its claims administrator for the policies. In turn, under the Intercompany Agreement, NICO engaged Resolute to perform services for it, delegating to Resolute the obligation to fulfill its duties to OneBeacon. If Resolute, while acting for NICO on behalf of OneBeacon, breached the policies while acting within the scope of its authority, only OneBeacon would be liable to Colgate for breach of contract. OneBeacon remains fully and solely responsible for the performance of its obligations under the policies even if NICO and Resolute are performing those obligations on its behalf.

Moreover, without language in a reinsurance agreement indicating that the reinsurer intends to be directly liable to the

insured, the reinsurer has no obligation to the original insured (*Matter of Union Indem. Ins. Co. of N.Y.*, 200 AD2d 99, 107 [1st Dept 1994], *affd* 89 NY2d 94 [1996]). Here, the Reinsurance Agreement contains language specifically providing that, except in the case of OneBeacon's insolvency (not the case here), no third party has any rights under the contract.

■ Colgate argues that, because NICO administers claims under the policies, it can sue NICO directly as its primary insurer under *Klockner Stadler Hurter Ltd. v Insurance Co. of State of Pennsylvania* (785 F Supp 1130 [SD NY 1990] [hereinafter *Klockner I*]) and *Klockner Stadler Hurter Ltd. v Insurance Co. of State of Pennsylvania* (780 F Supp 148 [SD NY 1991] [hereinafter *Klockner II*]). However, *Klockner* is distinguishable. In the *Klockner* cases, the insurer assigned the right to directly sue the reinsurers to the policyholder (*Klockner I*, 785 F Supp at 1134; *see also Klockner II*, 780 F Supp at 154). For this reason, the court declined to grant the reinsurer's motion for dismissal (*Klockner I*, 785 F Supp at 1134). In the absence of any special circumstances such as those in *Klockner*, a reinsurer is not directly liable to a policyholder merely because the reinsurer administers the policyholder's claims or makes payment under those claims (*see e.g. USX Corp. v Adriatic Ins. Co.*, 64 F Supp 2d 469, 477 [WD Pa 1998]; *Millennium Petrochemicals, Inc. v C.G. Jago*, 50 F Supp 2d 654, 659-660 [WD Ky 1999]; *Pyun v Paul Revere Life Ins. Co.*, 768 F Supp 2d 1157, 1176-1177 [ND Ala 2011]; *Allendale Mut. Ins. Co. v Crist*, 731 F Supp 928, 933 [WD Mo 1989]).

■ Given the absence of a contract between NICO and Colgate, the claim that NICO breached the implied covenant of good faith and fair dealing also fails. Colgate argues that it adequately pleaded a separate implied covenant claim because it alleges that NICO refuses to communicate with its chosen counsel, to appoint local counsel, or to agree to confidentiality provisions in connection with disclosures about counsel's work. However, these allegations merely constitute a description of how NICO refuses to acknowledge Colgate's choice of independent counsel, which refusal is the subject of Colgate's breach of contract counterclaim against OneBeacon.

■ The remaining claims against Resolute should also be dismissed. No claim for tortious interference is stated because, in performing the complained-of acts, Resolute acted as a designated agent, and no action for tortious interference can lie against an agent acting within the scope of its duties on behalf

of the principal (*Devash LLC v German Am. Capital Corp.*, 104 AD3d 71, 78-79 [1st Dept 2013], *lv denied* 21 NY3d 863 [2013]). An agency relationship existed because NICO is OneBeacon's agent with respect to the policies and, under the Services Agreement, OneBeacon authorized NICO to appoint agents to perform NICO's obligations under the contract. Thus NICO appointed Resolute as OneBeacon's agent (*see Manley v AmBase Corp.*, 121 F Supp 2d 758, 772 [SD NY 2000]).

■ Colgate also invokes Massachusetts General Law, chapter 93A, § 11, which provides for a private right of action to those suffering monetary losses from unfair deceptive conduct in commercial dealings. The Massachusetts statute, however, does not apply when another jurisdiction's laws govern the underlying breach of contract claims (*Northeast Data Sys., Inc. v McDonnell Douglas Computer Sys. Co.*, 986 F2d 607, 609-610 [1st Cir 1993]). While OneBeacon is domiciled in Massachusetts, the parties do not dispute that New York law governs the contracts here although none of the policies are in the record. Colgate argues, however, that its statutory claim against Resolute is not predicated on contract-based claims. Nevertheless, the documentary evidence shows that Colgate bases its claim on Resolute's alleged duties "under the [policies]." Accordingly, the Massachusetts statute is inapplicable.

■ Finally, Colgate's counterclaim for a declaratory judgment against Resolute is dismissed for failure to state a claim. Colgate contends that it seeks a declaration of its common law, extra-contractual rights to independent counsel and to defend the talc cases free from Resolute's interference and tortious conduct. Colgate's claim for declaratory relief is predicated on Resolute's alleged duty to Colgate as a third-party beneficiary under the Intercompany Agreement. That contract, however, explicitly provides that NICO and Resolute did not intend the contract to confer any rights on third parties.

Accordingly, the order of the Supreme Court, New York County (Carol R. Edmead, J.) entered November 4, 2013, as amended by the order of the same court and Justice, entered November 20, 2013, which, to the extent appealed from, denied so much of counterclaim defendants NICO and Resolute's motion as sought to dismiss the first, fifth and ninth counterclaims as against Resolute and the third and seventh counterclaims as against NICO, should be reversed, on the law, without costs, the motion granted, and the claims dismissed. The Clerk is directed to enter judgment in favor of the counterclaim defendants-appellants.

Tom, J.P., Renwick, Andrias and Clark, JJ., concur.

Order, Supreme Court, New York County, entered November 4, 2013, as amended by order, same court and Justice, entered November 20, 2013, reversed, on the law, without costs, the motion granted, and the claims dismissed. The Clerk is directed to enter judgment in favor of the counterclaim defendants-appellants.